# Richmond

## James P. Haughey v. W. Frank Smyth, Jr., Superintendent of the Virginia State Penitentiary.

March 1, 1948.

Record No. 3345.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*W. A. Hall, Jr.*, for the plaintiff in error.

*Harvey B. Apperson, Attorney General*, and *Ballard Baker*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

Petitioner, James P. Haughey, was, on the 9th day of August, 1945, sentenced, by the Circuit Court of Washington County, to life imprisonment on his plea of guilty to a charge of robbery. By petition for a writ of *habeas corpus*, filed in the Circuit Court of the City of Richmond, he sought release from the penitentiary. After a full factual hearing in that court his discharge was denied by order of February 11, 1947. That decision is before us for review.

■ Robbery is not defined by statute in Virginia. The elements of the crime are the same as at common law. *Maxwell* v. *Commonwealth*, 165 Va. 860, 183 S. E. 452; *Falden* v. *Commonwealth*, 167 Va. 542, 189 S. E. 326. The punishment is prescribed by section 4405 of the Code of 1942 (Michie), and is fixed with reference to the means and mode by which the offense is accomplished. It provides:

"If any person commit robbery by partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be punished with death, or by confinement in the penitentiary for life, or for any term not less than eight years. If any person commit a robbery in any other mode, or by any other means , he shall be confined in the penitentiary not less than five years nor more than ten years."

The robbery for which petitioner was convicted was deliberate and brutal. It was committed by him and one James Holloman. They were indicted separately but tried together and received similar sentences. Holloman is now dead.

By clear and understandable averments, the indictments charged robbery of one Francis Brewster by choking and strangling, striking and wounding him with a deadly weapon, tying his hands and feet and forcibly taking money and property from his person.

It is admitted that before petitioner was tried he was offered assistance of able and experienced counsel; that he declined such assistance; that he waived trial by jury and elected to plead guilty before the trial judge.

The order of conviction is, in part, as follows:

"This day came the attorney for the Commonwealth and came also the defendant in person, and the defendant having indicated to the Court that he desired to have his indictment disposed of and that he desired to enter a plea of guilty; thereupon the Court inquired of the defendant if he had counsel to represent him and the defendant replied that he did not, and the Court thereupon advised the defendant that the court would appoint counsel to represent him if he desired to be represented by counsel. The defendant then stated to the Court that he did not wish to be represented by counsel and that he wanted to enter a plea of guilty and put himself on the mercy of the Court.

"Whereupon the defendant was arraigned and upon his

arraignment pleaded guilty, and the defendant having waived trial by jury and the Court and the Commonwealth's Attorney having concurred in the trial of this case without a jury, the Court proceeded to hear and determine this case without a jury; and the Court having heard the evidence introduced by the Commonwealth (the defendant having offered no evidence) and argument of the attorney for the Commonwealth, recessed court until 2 o'clock P. M. to consider his findings, and after mature consideration of defendant's plea of guilty to the indictment, the evidence of the Commonwealth, and the argument of the attorney for the Commonwealth, is of the opinion that the defendant is guilty of robbery as charged in the indictment, as shown in the written comments of the Court read in open court before pronouncing judgment and ordered to be filed in the record, and the Court doth so find, and the Court is further of the opinion to fix the defendant's punishment at life imprisonment in the State Penitentiary."

Petitioner now claims that he was denied due process of law as guaranteed to him under the Fourteenth Amendment to the Constitution of the United States; that the lack of due process exists because there was no competent and intelligent waiver of counsel by him. He asserts that effective waiver of counsel was not made because of his age, inexperience and lack of adequate explanation to him of the effect of his plea of guilty.

The above particulars render material and require a careful consideration and appraisal of the age, intelligence, and experience of the petitioner at the time of his waiver of counsel as well as the facts and circumstances attending his trial.

Though it fully appears from the order of conviction and is admitted that he was tendered and refused assistance of counsel, the inquiry does not end here.

In view of the petitioner's allegations, it must be ascertained from all of the circumstances whether in making such waiver he acted competently, or whether he did not

and was thereby wrongfully deprived of his constitutional right to counsel and the jurisdiction of the court so lost.

Petitioner was born in Northfield, New Jersey, on January 7, 1926. He attended school and completed the eighth grade. At the time of his trial he was about nineteen and one-half years of age. At the age of thirteen he was committed to a reformatory, but the cause of commitment does not appear. He was finally released from that institution in February, 1943.

When about seventeen he accepted employment until he enlisted in the Merchant Marine in July, 1943, where he received wages of $250 per month. He was serving on tankers part of the time and primarily engaged in coastal trips. However, on one voyage he went abroad to ports of England, France and Belgium. In April, 1944, he terminated this employment and enlisted at Camden, New Jersey, as a seaman in the United States Navy, and took training at Bainbridge, Maryland, and at the Naval Air Station, Pensacola, Florida. In September, 1944, he was given a medical discharge from the Navy. He then secured civilian employment with the Army at Atlantic City, New Jersey. While so employed he committed the crime of larceny of an automobile, was tried, convicted and received an eleven months suspended sentence. Evidently an effort was made to rehabilitate him for he was allowed to re-enlist in the Merchant Marine and received the same compensation as previously. During this enlistment, he took another trip abroad, being away about two and one-half months.

On April 28, 1945, he was, for the second time, released by the Merchant Marine. He admits that in June of that year he was guilty of stealing another automobile. He secured bail pending trial upon that charge, violated its conditions, and has never been tried.

About July 15, 1945, he met James Holloman, who had also served in the armed forces of the United States. These two perpetrated the theft of $1000 worth of whiskey

which they disposed of by sale. The particulars of this crime do not appear from the record.

The above recital discloses that petitioner's experience was wide and varied. He had a reasonable amount of education; had been employed in several different positions; and received naval training and travel. He had participated in several serious criminal offenses and was not without court experience before he and his companion committed this robbery.

By hitch-hiking and by use of some of the proceeds of the sale of the stolen whiskey, he and Holloman traveled to New Orleans, Louisiana, and thence to Bristol, Tennessee. On the outskirts of the latter city on the evening of July 30, 1945, they were offered a ride on a truck driven by Francis Brewster.

Petitioner says that on the suggestion of his companion they decided to rob their benefactor; that he was a little scared about so doing but after Holloman said, "We could do it and get away with it," he acquiesced. A few miles from Abingdon, Virginia, Holloman drew a knife on the victim; told him it was a hold-up, and made him pull to the edge of the road. The weapon used which petitioner calls a knife, the trial judge described as a "dirk or bowie-knife—a fearful looking weapon." By putting the knife at Brewster's neck, he was required to relinquish the wheel of the truck and petitioner took the driver's seat. He turned into and proceeded several miles along a less frequented road until the truck became stuck in the mud and Brewster was ordered to get out. Petitioner secured the knife from his companion and held the same on Brewster while Holloman robbed him of about $140 in cash, his watch and pen knife. While petitioner continued to hold the dirk or knife on their victim, Holloman tied him with some rope procured from the truck, and then struck him over the head, the blow rendering him unconscious and knocking him to the ground. They walked back to the main highway and secured a ride into Marion,

Virginia. Thence they proceeded by bus to Wytheville, where, upon arrival they were arrested.

Brewster's knife and $50 of the stolen money were found on petitioner. In the custody of officers, they were taken to Abingdon about 5:00 A. M., July 31, 1945. On the morning of July 31st or August 1, 1945 (the exact date is not clear from the evidence), they appeared before the trial justice for preliminary examination where both admitted their guilt to the charge of robbery. The matter was certified to the Circuit Court of Washington county.

Petitioner said that he had three brothers and that his father was living, but he made no effort to get in touch with them because he was ashamed and "didn't want my father to know about it." He further said he was without funds.

He and his companion remained in jail until August 9, 1945, when they were indicted separately. He admits that he knew if he had pleaded not guilty the jury would have fixed his punishment. With that knowledge he and Holloman waived trial by jury, indicated their desire and intention to plead guilty, and so elected to be tried by the judge.

The judge of the circuit court was informed that the prisoners were without counsel but wished to be tried promptly,—"to get the matter over with." . He contacted Mr. Fred C. Parks, an able attorney, experienced in the trial of criminal cases, who agreed to serve as counsel for the prisoners. Each was advised of his right to counsel without cost and told that the attorney who would represent them was able and experienced. Before the prisoners were arraigned the trial judge insisted that they accept the aid of counsel. They, however, expressly declined, said that they did not want an attorney nor did they want to be tried by a jury, but desired to plead guilty and leave the entire matter to the judge.

The testimony of the petitioner on that matter is as follows:

"Q. Did Judge Robertson inquire of you whether you desired counsel to represent you on this charge?

"A. Yes, sir.

"Q. What did you tell Judge Robertson?

"A. I told him no, sir, I didn't want any. I was pleading guilty.

"Q. Were you tried separately or at the same time with James Holloman?

"A. Tried together.

"Q. You have stated Judge Robertson offered you counsel, is that correct?

"A. Yes, sir."

\*    \*    \*    \*    \*    \*

"Q. Judge Robertson has a statement in the record here that he asked you about counsel, you stated that you did not desire any, and that you said you wanted to enter a plea of guilty and put yourself on the mercy of the Court.

"Is that right?

"A. That is right."

There is no reason to believe that the accused did not know the seriousness of the offense; he was intelligent and crime was not new to him. But regardless of whether he was so aware, it appears that the judge explained the seriousness of the charge and the penalties that could be imposed. Petitioner says that he was not advised of the possible penalties before he pleaded, but there is ample evidence that he was. The Commonwealth's Attorney who prosecuted the case had this to say on the subject:

"Q. Are you satisfied that Judge Robertson explained to the petitioner here the penalties that could have been inflicted for robbery?

"A. I am satisfied that he told them. I don't know whether they understood it or not, but I am satisfied he told them what the penalties might be.

"Q. Do you recall him telling them that?

"A. Yes, I think so, very definitely, because as a matter of fact, Mr. Hall, the Court was rather insistent that they have counsel in the case. That was so because we thought

it was a serious case, and the Court was rather insistent on it. * * *.

"Q. The question I asked you, Mr. Thompson, was: Are you certain beyond any doubt that Judge Robertson before the pleas were entered, or at any time explained to them the provisions of Section 4405 as to the penalties for the crime of robbery, are you satisfied of that?

"A. I am positive that he explained it to them. I wouldn't say at what time in the proceedings it was done.

"By the Court:

"Q. It was explained to him before he entered his plea of guilty?

"A. That is my best recollection about it, sir."

The trial judge in the *habeas corpus* proceeding may well have concluded that explanation of the penalties was made before the prisoners pleaded. There was evidence on which to base such finding. His comments indicate that he so concluded. They follow, in part:

"The Court: Mr. Hall, don't you think that the evidence here discloses that the accused was told the nature of his offense and explained by the Court what the punishment would be, and said that he would be entitled to a trial by jury if he wanted it. He said he did not want that, he declined a trial by jury, and submitted the case to the Court, and on his plea of guilty the Court, the only thing it had to do then, was to fix his punishment upon his plea. He pled guilty. I do not see what * * *

"Mr .Hall: I am coming to that.

"The Court: I do not see what you are driving at. All of the evidence here before me is that he had a fair and impartial trial. He was told the nature of the offense, he was told he could have a trial by jury if he wanted it, and the Commonwealth Attorney was there, representing the Commonwealth of Virginia.

"I do not see what your grounds are, Mr. Hall."

* * * * * *

"The Court: He seems to be an intelligent man, from your line of examination. He showed intelligence.

"Mr. Hall:  My contention in the case, Your Honor, is that the waiver of counsel was not intelligent and competent under the ruling of the United States Supreme Court in *Johnson* v. *Zerbst* [304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, 146 A. L. R. 357], and under subsequent cases.

"My further contention is that at the time he was tried that he was a minor, and under numerous decisions a minor cannot waive counsel, and that his wishes should not be respected in the matter.

"My further contention is: The ruling of the Supreme Court of the United States on December 9, 1946, in the case of *Carter* v. *Illinois* [329 U. S. 173, 67 S. Ct. 216, 91 L. Ed. 157], that it was encumbent upon Judge Robertson not to pay any attention to the wishes or desires of the defendant, and that he was compelled to assign counsel certainly for the purpose of sentence.

"The Court:  Is it your position the Court must assign counsel whether the accused waives it or not?  It is your contention that even though he waives it on his plea of guilty he has to assign counsel?  I do not see it that way.

"Mr. Hall:  Your Honor, in certain cases—

"The Court:  After the accused has been explained the nature of the offense, what his defense can be, and told that if he wanted counsel that the Court would appoint counsel for him, he said no that he didn't want counsel, he wanted to waive the jury and be tried by the Court, then there is only one thing for the Court to do, after he has explained it to the accused, he knows the nature of the offense, he knows what his defense can be, then all he can do is to do what was done in this case.  That is all that he can do.  The Court cannot put human intelligence in the heads of men, and that young man seems to have had intelligence, he seems to be an intelligent man."

It is further suggested that the accused was hurried into trial; that the judge did not explain the degrees of punishment, that is, that robbery by actual violence or presenting a deadly weapon is punished more severely than when unattended by such aggravated circumstances; that the interests

of the two prisoners conflicted because James Holloman proposed the crime and actually struck their victim; that therefore the same attorney could not properly have represented both; and that these circumstances are evidence of ineffective waiver of counsel.

The first contention is factually incorrect. Both prisoners asked for a prompt trial. Petitioner testified as follows:

"Q. Do you recall how they happened to try you on August 9th? Did you request a trial?

"A. We requested it as soon as possible."

It appears that information was given as to the penalties for robbery. To have undertaken a detailed explanation would have served no good purpose. The crime charged was robbery by actual violence and use of a deadly weapon. It was within the more serious category and that is not denied. It is beside the point to consider possible conflict in the interests of the two prisoners. They both deliberately and knowingly refused legal assistance and the time for making inquiry as to conflicting interests, if any, never arrived.

There is evidence that the petitioner was not in good health; that he had drunk considerable intoxicating liquor over a period of time; that he suffered from diabetes and lost weight while confined in jail. However, no complaint was made to the court concerning his physical condition, nor does it appear that the same affected him in any way in the decision that he made to decline the assistance of counsel, waive trial by jury, and plead guilty. If the accused elects to waive advice of counsel there is no Constitutional or statutory requirement in Virginia that he have such advice as a prerequisite to the jurisdiction of the Court. *Thornhill* v. *Smyth*, 185 Va. 986, 41 S. E. (2d) 11.

The petitioner was indigent and charged with a capital offense. That he was entitled to assistance of counsel, if desired by him, is not denied. *Barnes* v. *Commonwealth*, 92 Va. 794, 23 S. E. 784; *Riddick* v. *Commonwealth*, 135 Va. 724, 115 S. E. 523; *Watkins* v. *Commonwealth*, 174 Va. 518, 6 S. E. (2d) 670; *Stonebreaker* v. *Smyth*, ante, p. 250, 46

S. E. (2d) 406; *Cottrell* v. *Commonwealth, post,* p. 351, 46 S. E. (2d) 413; *Powell* v. *Alabama,* 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; *Johnson* v. *Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, 146 A. L. R. 357; *Tomkins* v. *Missouri,* 323 U. S. 485, 65 S. Ct. 370, 89 L. Ed. 407; *Rice* v. *Olson,* 324 U. S. 786, 65 S. Ct. 989, 89 L. Ed. 1367; *Canizio* v. *New York,* 327 U. S. 82, 66 S. Ct. 452, 90 L. Ed. 545; *De Meerleer* v. *Michigan,* 329 U. S. 663, 67 S. Ct. 596, 91 L. Ed. 471; *Carter* v. *Illinois,* 329 U. S. 173, 67 S. Ct. 216, 91 L. Ed. 157, and *Williams* v. *Huff,* 142 F. (2d) 91.

In the cases of *Stonebreaker* v. *Smyth, supra,* and *Cottrell* v. *Commonwealth, supra,* in opinions by Chief Justice Hudgins and Justice Buchanan, respectively, rendered at this session of court, former decisions of this court and numerous recent pronouncements by the Supreme Court of the United States on this subject are considered and reviewed. The more liberal and extended effect recently given to the "due process" clause of the Fourteenth Amendment of the Federal Constitution by the Supreme Court of the United States, as applied to trials in State courts for serious criminal offenses, is recognized and discussed. However, the question here presented is not that of petitioner's constitutional right to counsel, but a factual one of whether he did or did not effectively waive that right. The answer must be ascertained from a just appraisal of the facts and circumstances in evidence.

Numerous Federal cases are relied upon to sustain the contention that the petitioner made no competent and intelligent waiver of his constitutional right to counsel, principal among which are *Johnson* v. *Zerbst, supra; De Meerleer* v. *Michigan, supra; Williams* v. *Kaiser,* 323 U. S. 471, 65 S. Ct. 363, 89 L. Ed. 398; *Williams* v. *Huff,* 142 F. (2d) 91, and *Foster* v. *Illinois,* 332 U. S. 134, 67 S. Ct. 1716, 91 L. Ed. 1542.

In *Johnson* v. *Zerbst, supra,* the prisoner had been convicted in a Federal Court and undertook to invoke by *habeas corpus* the protection of the provision of the Sixth

Amendment to the Federal Constitution that, "In all criminal prosecutions, the accused shall enjoy the right * * * to have Assistance of Counsel for his defense." Petitioner and his companion were held in jail for two months, indicted January 21, 1935, and on January 23, 1935, were taken to court and there for the first time received notice of the indictment. On that day they were arraigned, tried, convicted and sentenced to the penitentiary. They had little education and had never before been charged with crime. Though they had legal assistance at their preliminary examination, they were unable to employ counsel for their trial. They made known that fact but no counsel was offered and they said they were ready for trial and pleaded guilty. No actual request was made to the judge for counsel but they later asserted that they had asked the District Attorney for counsel which had been refused; this the District Attorney denied. Upon these facts, the District Court that entertained the *habeas corpus* petition did not find that the accused had waived his constitutional right to counsel but denied discharge from custody upon procedural grounds. In reversing that decision, the Supreme Court of the United States said: "There is insistence here that petitioner waived this constitutional right. *The District Court did not so find. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case*, including the background, experience, and conduct of the accused." (Italics supplied.)

In *Williams* v. *Kaiser, supra*, petitioner sought discharge from custody upon *habeas corpus*. He had pleaded guilty to an indictment for robbery and was sentenced to the State Penitentiary for fifteen years. After recital of these facts, his petition set forth that, " 'Prior to his conviction and sentence, as aforesaid, the petitioner requested the aid of counsel. At the time of his conviction and sentence, as aforesaid, the petitioner was without aid of counsel, the

Court did not make an appointment of counsel, nor did petitioner waive his constitutional right to the aid of counsel, and he was incapable adequately of making his own defense, in consequence of which he was compelled to plead guilty.' "

The court also said: "The petition for *habeas corpus* was denied without requiring the State to answer or without giving petitioner an opportunity to prove his allegation."

On that record the cause was remanded to the trial court for hearing upon the facts. To the same effect are *Tomkins* v. *Missouri, supra,* and *Rice* v. *Olson, supra.*

In *De Meerleer* v. *Michigan, supra,* petitioner, aged seventeen, was charged with murder. On the same day that information was filed, he was arraigned, pleaded guilty, was tried, convicted of murder in the first degree and sentenced to life imprisonment. He was without counsel and was never advised of his right to counsel. As there was clearly no waiver of counsel in this instance, the court concluded that petitioner's rights under the Fourteenth Amendment had been violated. See also, *Rice* v. *Olson, supra.*

On the authority of *Williams* v. *Huff,* 142 F. (2d) 91, decided by the Court of Appeals of the District of Columbia, it is insisted that petitioner should have been released. In that case there had been no factual finding in the *habeas corpus* proceeding that the accused had competently and intelligently waived the assistance of counsel. The District Court had dismissed the writ of *habeas corpus* on the petition and answer without a hearing. The answer asserted that petitioner, a minor, was advised of his right to counsel but refused such assistance and pleaded guilty. However no evidence was heard upon that issue. The order of reversal directed that evidence be taken, and that it be ascertained, in view of petitioner's age, education, and experience and other pertinent facts, whether he had established that he had not made an intelligent and competent waiver of counsel.

The case at hand differs materially from the above. Here the petitioner testified in person in the *habeas corpus* proceedings and his intelligence was made manifest to the court to such an extent as to be commented upon. The court

factually decided that there had been intelligent and effective waiver of counsel.

In the very recent case of *Foster* v. *Illinois, supra,* quoted from and discussed in *Stonebreaker* v. *Smyth, supra,* the record disclosed that on the trial of petitioners in the State court they were "advised of their rights of trial and of the consequences of an entry of a plea of guilty * * * " and " * * * the court advises and admonishes each of the said defendants of the consequences of entering such plea of guilty," but that each pleaded guilty to burglary and larceny. In the *habeas corpus* proceeding they sought discharge on the ground that they had not been offered counsel. In refusing to release the prisoners, Justice Frankfurter, speaking for the majority of the court, said:

" * * * We thus have in effect the bald claim that, merely because the record does not disclose an offer of counsel to a defendant upon a plea of guilty, although the court before accepting the plea duly advised him of his 'rights of Trial' and of the consequences of such a plea, he is 'deprived of rights essential to a fair hearing under the Federal Constitution'. *De Meerleer* v. *Michigan, supra* (329 U. S. 663, at p. 665, 67 S. Ct. 596, 91 L. Ed. 471, 472).

"We reject such a claim. Most incarcerations are upon pleas of guilty, and probably most such pleas have been made without the felt need of counsel. It is not for us to suggest that it might be desirable to offer to every accused who desires to plead guilty the opportunities for counsel and to enter with formality upon the record the deliberate disclaimer of his need for counsel because of a full appreciation of the meaning of a plea of guilty as expounded by responsible judges."

■ Many and varied factors may and usually are to be considered in ascertaining when there has been an effective waiver of counsel. But it may be said with confidence that even in capital cases competent and intelligent waiver exists whenever the accused has attained such age as to be responsible for his criminal acts, is aware or told of his right to counsel, has such intellect, education and experience as to

know the seriousness of the offense with which he is charged and reasonably comprehends or is advised of the possible penalties to be incurred and thereupon elects to defend himself or admit his guilt to the charge.

Though it be true that competent and effective waiver of counsel depends on the circumstances of each case, and that constitutional rights are not to be deemed lightly relinquished, yet the judgment of a court of general jurisdiction reciting the tender and refusal of counsel imports such regularity, and so establishes that there was no denial of due process of law in this respect as to impose upon the petitioner the distinct burden of proving by a clear preponderance of the evidence that he did not intelligently waive his right to counsel.

For enlightening discussions of the right of an accused to legal assistance and the many and varied facts and circumstances that may enter into a determination of whether competent and intelligent waiver of counsel has been made, we refer to 42 Columbia Law Review, p. 271, 33 Virginia Law Review 731, 27 Marquette Law Review 34, 25 North Carolina Law Review 325, 23 Cornell Law Quarterly 270, 13 University of Chicago Law Rev. 266, 23 Texas Law Review 66, and cases there cited.

The judgment of the Circuit Court of Washington County discloses a fair offer of counsel before arraignment, and rejection by the accused. In addition, the record in this proceeding as made in the Circuit Court of the City of Richmond establishes a considered and intelligent waiver of legal assistance and a deliberate tender of a plea of guilty with knowledge and understanding of its consequences. We therefore find no denial of "due process of law", and conclude that petitioner is not illegally imprisoned.

The order of the Circuit Court of the City of Richmond is accordingly affirmed.

*Affirmed.*