## Richmond

SUPERINTENDENT OF THE POWHATAN CORRECTIONAL CENTER

V.

GENE RAYMOND BARNES

January 16, 1981.

Record No. 791626.

Present: All the Justices.

*Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellant.
*Rodney G. Goggin (Moncure & Goggin,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

The Superintendent of the Powhatan Correctional Center appeals from an order entered August 6, 1979, granting a petition for a writ of habeas corpus filed by Gene Raymond Barnes.

Barnes's incarceration resulted from a jury conviction of statutory burglary in May, 1977. An attorney was appointed to represent him on the charge, but Barnes announced that he intended to represent himself. The trial judge directed the attorney to make himself available for any legal advice Barnes might request. The attorney represented the accused at his preliminary hearing and, prior to trial, reviewed trial notes Barnes had prepared, acquired copies of legal precedents he requested, and drafted jury instructions. The attorney sat at counsel table during trial, but Barnes made the opening and closing statements, assembled and interviewed his own witnesses, examined those witnesses and cross-examined prosecution witnesses, raised objections to the Commonwealth's questions, and made several motions.

In his habeas petition, Barnes alleged, *inter alia,* that he had been denied effective assistance of counsel. The first of two plenary hearings was conducted April 30, 1979. The issue addressed at that hearing was whether Barnes had knowingly and intelligently waived his Sixth Amendment right to counsel. Barnes testified that he had decided to conduct his own defense because he could not agree with counsel about trial tactics; that he assumed the attorney "would be the actual lawyer" but that he refused his requests for legal advice during the course of the trial; and that the trial judge had never explained the consequences of a waiver of counsel.

The attorney testified that Barnes had consented to his representation at the preliminary hearing; that he had advised Barnes concerning the elements of the charge and the proof required; that Barnes would not permit him to assist in interviewing defense witnesses; that he had answered every legal question Barnes had asked and had helped him phrase certain questions and post-verdict motions; and that he had not offered any jury instructions or objected to any Commonwealth instructions without Barnes's prior approval. Asked if the trial judge had advised Barnes that "if he chose to represent himself, he would be exposing himself to any inadequacy that his representation might invoke", the attorney replied that "the only thing I can remember, to be very frank, I just remember that the Court told him that he could represent himself, but that I would remain as his legal advisor."

The Commonwealth's Attorney who had prosecuted the charge testified that the trial judge had "encouraged" Barnes to allow an attorney to "handle the case for him" and had explained that "there may be legal technicalities that an attorney would be in a better

position to handle than somebody that did not have training in this profession."

Considering this evidence, the habeas judge, who had also presided at the felony trial, made an oral ruling that Barnes had waived his right to counsel "with full knowledge and understanding of that right". Before an order was entered on that ruling, transcripts of the proceedings at term day and at arraignment were discovered. There was nothing in those transcripts or the trial transcript to show that Barnes had been warned of the risks stemming from self-representation, and proceeding under a writ of error *coram vobis,* the habeas judge conducted a second plenary hearing on June 28, 1979.

At that hearing, the sheriff testified that he remembered that the trial judge had warned Barnes about "the problems he had" representing himself. The deputy sheriff recalled hearing the trial judge advise Barnes that "there was a lot of legal technicalities that he may not be aware of and that he should, you know, consider having an attorney". According to both witnesses, the trial judge had given this advice in open court and before trial, but neither could remember the date or the nature of the proceeding.

Commenting upon the testimony of the Commonwealth's witnesses, the habeas judge said in a memorandum opinion:

"The Court has the highest respect for the integrity and credibility of these witnesses and thinks it appropriate to state that their recollection is consistent with the Court's own. On the other hand, [the trial attorney] recalled no such advice, and Barnes denied that such advice was given him. The transcript of the proceedings preliminary to trial and at trial reflects no such advice. It is the opinion of the Court that the determination of this question should be based upon the official transcript of the proceedings, and not upon the recollection of participants or observers."

Finding that Barnes "did not have a clear understanding of the significance and effect of his waiver pro tanto", the habeas judge entered a final order granting Barnes's petition and vacating his conviction. The final order was suspended to permit a retrial at the election of the Commonwealth. The Commonwealth elected to appeal, and Barnes was remanded to custody.

The Attorney General contends that the habeas court "erred by refusing to consider evidence not found in the official transcripts"

and that such evidence "adequately showed that petitioner had validly waived his right to counsel."

■ The Sixth Amendment commands that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

> "If the accused . . . has not competently and intelligently waived his constitutional right [to counsel], the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. . . . The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by *habeas corpus.*" *

*Johnson* v. *Zerbst,* 304 U.S. 458, 468 (1938).

While the Supreme Court has said in dictum that an accused who has chosen to represent himself "should be made aware of the dangers and disadvantages of self-representation", *Faretta* v. *California,* 422 U.S. 806, 835 (1975), it has never held that the absence of such a cautionary instruction, standing alone, defeats a waiver. In *Johnson* the Court said that "whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* at 464. *See Haughey* v. *Smyth,* 187 Va. 320, 334-35, 46 S.E.2d 419, 426, *cert. denied,* 334 U.S. 853 (1948). This rule, which was expressly reaffirmed in *North Carolina* v. *Butler,* 441 U.S. 369, 374-75 (1979), where the Court upheld an implicit waiver, is the prevailing constitutional standard. While it is preferable practice for trial courts to warn an accused of the risks of self-representation, we believe that a cautionary instruction is only one of the "facts and circumstances" relevant to a determination of the validity of a waiver of counsel.

It appears, however, that this was the only circumstance considered below; the habeas proceeding was conducted upon the theory

---

* An accused has a constitutional right to defend himself. *Faretta* v. *California,* 422 U.S. 806, 836 (1975). And it has been held that when, as here, counsel has been appointed to act as legal advisor to an accused who has claimed that right, the accused cannot invoke his Sixth Amendment guarantee in a habeas proceeding. *State* v. *Edwards,* 592 S.W.2d 308, 312 (Mo. Ct. App. 1980). We are of opinion, however, that such "hybrid" representation is not "the equivalent of full representation for purposes of waiver", *Maynard* v. *Meachum,* 545 F.2d 273, 277 (1st Cir. 1976), and that what the court below denominated a "waiver pro tanto" is not constitutionally sufficient unless it was "competently and intelligently" made.

that a waiver can never be constitutionally sufficient unless made with the benefit of an explicit cautionary instruction. The decision of the habeas judge was based upon that premise, and the Commonwealth does not challenge it on appeal. Rejecting that premise, we nevertheless will entertain it for purposes of this appeal.

■ We agree with the Attorney General that, in determining the validity of a waiver of counsel, a habeas court is not limited to the official record of the proceedings underlying the petitioner's conviction. If the issue "can be fully determined on the basis of recorded matters, the court may make its determination . . . on the basis of the record." Code § 8.01-654(B)(4). Otherwise, due process requires a plenary hearing. "To be sure, the . . . record is competent evidence, . . . but the petitioner, and the State, must be given the opportunity to present other testimonial and documentary evidence relevant to the disputed issues." *Townsend* v. *Sain,* 372 U.S. 293, 322 (1963). Thus, while the question "whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record", *Johnson* v. *Zerbst,* 304 U.S. at 465, a habeas court considering the validity of a waiver is not bound by an omission in the trial record.

■ We do not agree, however, that the habeas judge failed to consider the evidence adduced at the petitioner's plenary hearings. On the contrary, as we read his memorandum opinion, the judge faithfully summarized all the testimony, expressed his confidence in the integrity and credibility of the Commonwealth's witnesses, and acknowledged that their recollection was in accord with his own. Yet, noting that the transcripts did not support those recollections and that the oral evidence itself was in conflict, he obviously concluded that the written record, reinforced as it was by the testimony of the petitioner and the attorney who sat with him throughout all the antecedent proceedings, was more reliable as evidence than recollections of events two years past.

■ The judge's determination that Barnes "did not have a clear understanding of the significance and effect of his waiver pro tanto" was a finding of fact resolving conflicting evidence. We cannot say that his finding was contrary to the evidence or without evidence to support it. The order granting the writ of habeas corpus will be affirmed, but without prejudice to the right of the Commonwealth to re-try Barnes upon the indictment.

*Affirmed and remanded.*