## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Maria F. Castro

March 17, 2015

Case No. MI-2014-2683

By Judge Randy I. Bellows

### I. *Introduction*

This case presents the following question, which arises out of the defendant's eighteen year old petit larceny plea before a judge of the General District Court: Does a writ of error *coram vobis* lie to vacate a conviction based on the uncontested fact that the trial court did not obtain a knowing, intelligent, and voluntary waiver of Defendant's constitutional rights at the time of her plea? For the reasons stated below, the Court finds that controlling legal precedent compels the conclusion that a writ of error *coram vobis* cannot be used for this purpose.

### II. *Factual Background*

Defendant was charged with Grand Larceny on May 28, 1997, arising out of an incident where it is alleged that she concealed clothing items from Hecht's Department Store in Tysons Corner, Fairfax, Virginia. Fairfax County Police responded to the scene and arrested the defendant.

On the morning of June 18, 1997, Maria Castro entered a plea of guilty to the crime of petit larceny in the Fairfax County General District Court. While Defendant was represented by counsel, she cannot recall who her attorney was. (Transcript Dated Jan. 23, 2015, p. 4.) However, Defendant asserts that no plea colloquy took place between her and the Court at the time of her plea, at which she would have affirmatively waived her Constitutional rights. *Id.* at 4-5. The Commonwealth has conceded that the defendant was never questioned by the General District Court judge to determine whether

she understood that by pleading guilty she was giving up her constitutional rights, including her right against compulsory self-incrimination and her right to confront the witnesses against her. (Transcript Dated Jan. 23, 2015, pp. 35-37.) Rather, the "judge asked her, how do you plea? She said guilty. Then the judge talked to her lawyer and the prosecutor, and she left the courtroom." *Id.* at 5.

Defendant was given a $200 fine and a suspended sentence of 180 days. Today, almost eighteen years later and for reasons related to the potential immigration consequences of that 1997 plea, the defendant moves to vacate the plea pursuant to Virginia Code § 8.01-677.

### III. *Procedural History*

On August 13, 2014, Defendant filed her Motion To Reverse Judgment in the Fairfax General District Court. Defendant sought reversal of her 1997 conviction pursuant to Va. Code § 8.01-677. Defendant alleged that her June 18, 1997, guilty plea was unlawful because it violated the factual requirements for a guilty plea under the Virginia Constitution and the United States Constitution pursuant to *Graham v. Commonwealth*, 11 Va. App. 133, 397 S.E.2d 270 (1990), and *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

In support of its position, Defendant argued that, when a person tenders a plea of guilty, a court must have sufficient facts to determine whether the plea of guilty was knowing, voluntary, and intelligent. To establish that the plea was knowing, voluntary, and intelligent, the court must have sufficient facts to establish that the defendant affirmatively waived her fundamental constitutional rights. Defendant contends that, because the General District Court judge failed to ask her whether she waived her right to trial by jury, the right to confront the witnesses against her, and the right against self-incrimination, the guilty plea was factually deficient because it was not knowing, voluntary, and intelligent.

On September 2, 2014, the Commonwealth filed its response to Defendant's Motion To Reverse Judgment. The Commonwealth agreed that the United States Constitution provides an individual with the right against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accuser. *Boykin*, 395 U.S. at 243. The Commonwealth also agreed that, "a trial court is required to determine whether a defendant's decision to waive [these rights] by pleading guilty 'represents a voluntary and intelligent choice among alternative courses of action open to the defendant'." (Commonwealth's Response to Defendant's Motion To Reverse Judgment, at p. 2 (*citing North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)).) The Commonwealth argued however, that the defendant had failed to establish that her plea proceeding lacked these constitutional requirements.

First, Defendant's petit larceny record was destroyed on May, 28, 2007, pursuant to Va. Code § 16.1-69.57. *Id. See* Destruction Notice Issued by the Deputy Clerk of the Fairfax General District Court, dated February 24, 2014.

Va. Code § 16.1-69.57:

> The clerk of each district court shall destroy the court records upon expiration of the appropriate retention period as set forth in §§ 16.1-69.55 and 16.1-69.56 and consistent with the requirements of confidentiality for juvenile records. The Supreme Court shall determine the methods to be used in destroying court records. Likewise, magistrates shall destroy records retained in the office of the magistrate upon the expiration of the appropriate retention period as set forth in § 16.1-69.56.

Therefore, "there [was] no official record for either [of] the parties or the court to rely on." *Id.* Second, the "Officer assigned to [the] case has long retired and most likely would not even remember the proffer he gave to the Judge." *Id.* at 3. Third, the defendant's testimony was "biased" because her criminal conviction may have adverse immigration consequences. *Id.* Fourth, "[t]here is no record to determine who the judge assigned to the case was or what was said before the guilty plea was entered." *Id.*

On September 11, 2014, Defendant filed her Reply to the Commonwealth's Response. Defendant again argued that her guilty plea violated the factual requirements under the Virginia Constitution and the United States Constitution pursuant to *Graham*, 11 Va. App. 133, 397 S.E.2d 270 (1990), and *Boykin*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Defendant also argued that her position was supported by the arrest warrant forms that were used by the General District Court in 1997. Specifically, according to the defendant, the arrest warrant forms used in 1997 contained a check box labeled "guilty," but did not contain the additional check box currently used which reads, "[p]lea voluntarily and intelligently entered after the defendant was apprised of his rights against compulsory self-incrimination and his right to confront the witnesses against him."

On September 18, 2014, the matter was heard by The Honorable Richard E. Gardiner, of the Fairfax General District Court. Defendant's counsel proffered the following facts: (1) a Local Criminal History Check showed that Defendant was arrested for grand larceny on May 28, 1997, and pleaded guilty to petit larceny on June 18, 1997; and (2) the defendant would testify she was not asked whether she waived her right to confront her accusers or her right to remain silent. *Id.*

Defense counsel also proffered the affidavits of two criminal defense attorneys, Crystal Meleen and Manuel Capsalis, who asserted that, when

a defendant pleaded guilty to a misdemeanor in the General District Court in 1997, the customary practice and procedure did not include the court's asking the defendant whether she waived her right to confront her accusers or her right to remain silent, nor did the standard warrant form include a box where the judge could indicate that the defendant had waived the right to confront her accusers and her right to remain silent. *Id.*

Based on the proffered facts, Defendant asserted that her conviction ran afoul of *Graham*, 11 Va. App. 133, 397 S.E.2d 270 (1990), and *Boykin*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), because she did not knowingly, voluntarily, and intelligently waive her constitutional rights. Judge Gardiner denied Defendant's Motion To Reverse Judgment.

On November 12, 2014, Defendant filed a Motion for Reconsideration in the General District Court. Defendant's Motion re-alleged that Defendant's guilty plea was constitutionally deficient pursuant to *Graham*, 11 Va. App. 133, 397 S.E.2d 270 (1990), and *Boykin*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

The Motion for Reconsideration proffered the same evidence that was submitted and accepted by the Court at the original proceeding. However, Defendant also proffered additional evidence, which consisted of an affidavit from former Assistant Commonwealth's Attorney Toni Fay. Ms. Fay executed an affidavit affirming that the customary practice and procedure for misdemeanor pleas in 1997 did not include a defendant's waiver of his constitutional rights.

On November 14, 2014, Defendant's Motion for Reconsideration was heard by Judge Gardiner in the Fairfax General District Court. Defendant proffered the same evidence as was proffered in the original hearing in the General District Court in addition to Ms. Fay's affidavit. Counsel argued that the evidence presented to the General District Court in the original proceeding, as well as the newly proffered evidence, overcame the presumption of regularity established in *Parke v. Raley*, 506 U.S. 20, 29, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992), and, thus, warranted a reversal of Defendant's conviction.

On November 19, 2014, Judge Gardiner issued an Order denying Defendant's Motion for Reconsideration. Judge Gardiner concluded that "not asking the defendant whether she waived her Sixth Amendment right to confront her accusers or her Fifth Amendment right to remain silent do not constitute errors of fact for which *coram vobis* will lie under Code § 8.01-677."

On December 1, 2014, Defendant filed her notice of appeal with the Fairfax Circuit Court. Neither party filed additional briefs on the matter.

On January 23, 2015, this Court heard oral argument on the matter. At the hearing, defense counsel proffered the same evidence that was previously proffered to the General District Court. Defendant, again, alleged that her guilty plea was unconstitutional pursuant to *Graham*, 11 Va. App. 133, 397

S.E.2d 270 (1990), and *Boykin*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

At the hearing, the Commonwealth conceded that the defendant was never questioned by the General District Court to determine whether she understood that, by pleading guilty, she was giving up her constitutional rights, including her right against compulsory self-incrimination and her right to confront the witnesses against her. (Transcript Dated Jan. 23, 2015, at p. 37.) The Commonwealth maintained its position, however, that the General District Court's failure to obtain the Defendant's Constitutional waivers was not an "error of fact" cognizable under Va. Code § 8.01-677.

The Commonwealth also conceded at the hearing that the controlling case law in effect at the time of Ms. Castro's plea required an affirmative showing on the record of a knowing, intelligent, and voluntary waiver of constitutional rights. (Transcript Dated Jan. 23, 2015, at p. 38.) (*See Graham*, 11 Va. App. 133, 397 S.E.2d 270 (1990).) As explained in *Boykin*, the purpose of requiring an affirmative showing on the record is that a waiver of rights cannot be presumed from a "silent record." *Boykin*, 395 U.S. at 242.

### IV. *Jurisdiction of the Fairfax Circuit Court*

While neither party raised the issue of jurisdiction in this case, the Court will briefly address it. In *Neighbors v. Commonwealth*, 274 Va. 503, 509-11, 650 S.E.2d 514 (2007), the Supreme Court of Virginia ruled that "[t]here is no restriction to an appeal of a petition for a writ of error *coram vobis* from the general district court to the circuit court.... . [T]he appeal of the denial of a writ of *coram vobis* is within the jurisdiction of a circuit court under Va. Code § 17.1-513." *Id.* Therefore, this Court has jurisdiction over this matter.

### V. *Analysis*

#### A. *Rule 1:1*

Rule 1:1 provides in relevant part that, "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." The Supreme Court of Virginia has made clear that "[t]here are strong policy reasons favoring certainty of results in judicial proceedings." *Commonwealth v. Morris*, 281 Va. 70, 77, 705 S.E.2d 503 (2011). "Accordingly, [courts] attach a high degree of finality to judgments... ." *Id.* Rule 1:1 implements this stringent policy, and courts apply that standard rigorously, unless there is a clear statutory exception to the rule. *Id.* (*citing McEwen Lumber Co. v. Lipscomb Brothers Lumber Co.*, 234 Va. 243, 247, 360 S.E.2d 845 (1987)).

"Therefore, `[u]nless otherwise provided by statute ... Rule 1:1 prohibits the modification of a final order more than twenty-one (21) days after the date of entry'." *Id.* (*citing Charles v. Commonwealth*, 270 Va. 14, 17, 613 S.E.2d 432, n. * (2005)). Accordingly, trial courts are precluded from, "entering a second sentencing order altering an original sentencing order that has become final." *Id.* at 77 (*citing Charles*, 270 Va. at 19 (*citing Robertson v. Superintendent of the Wise Correctional Unit*, 248 Va. 232, 236, 445 S.E.2d 116 (1994))).

However, Rule 1:1 is not absolute. *Id.* at 78. While there are multiple exceptions to the rule (*see e.g.*, Va. Code § 19.2-303, Va. Code § 8.01-654, and Va. Code § 8.01-428), the relevant exception for purposes of this case is the writ of error *coram vobis* pursuant to Va. Code Ann. § 8.01-677.

## B. *The Scope of the Writ*

The writ of error *coram vobis* is an "extraordinary" remedy that is extremely limited in its application. *See United States v. Morgan*, 346 U.S. 502, 511, 74 S. Ct. 247, 98 L. Ed. 248 (1954). In order for the Court to grant Defendant's motion, the Court must make the determination that there is "an error of fact not apparent on the record, not attributable to the applicant's negligence, and which if known by the court would have prevented rendition of the judgment." *Dobie v. Commonwealth*, 198 Va. 762, 769 (1957). This Court has determined that no such error of fact exists in the present case.

"The writ of error *coram vobis*, or *coram nobis*, is an ancient writ of the common law." *Dobie*, 198 Va. at 768. "It was called *coram nobis* (before us) in King's Bench because the king was supposed to preside in person in that court." *Id.* at 768-69. "It was called *coram vobis* (before you — the king's justices) in Common Pleas, where the king was not supposed to reside." *Id.* "The difference in terminology related only to the form appropriate to each court... ." *Id.* (citing 49 C.J.S., *Judgments*, § 311, p. 561, n. 28. Mr. Minor says the proper designation here is *coram vobis*. 4 *Minor's Inst.*, 3 ed., part I, pp. 1052-53), "*Coram nobis* and *coram vobis* are considered the same proceeding in modern pleading and practice." *Neighbors*, 274 Va. at 509, n. 5; *Morris*, 281 Va. at 70, n. 1. For purposes of this opinion, we use the term *coram vobis*, as recognized in Va. Code § 8.01-677.

Va. Code § 8.01-677 provides that, "[f]or any clerical error or error in fact for which a judgment may be reversed or corrected on writ of error *coram vobis*, the same may be reversed or corrected on motion, after reasonable notice, by the court." The writ lies only to clerical errors and certain errors of fact. *Morris*, 281 Va. at 78. The parties concede that the motion for reconsideration is not based on a clerical error but rather an error in fact. (Transcript Dated Jan. 23, 2015, at p. 30.) Therefore, the Court's analysis will only address the alleged error of fact.

The writ of error *coram vobis* may not be used to "obtain a writ of error, or an appeal, or for any purpose other than to correct a `clerical error or error in fact'." *Morris*, 281 Va. at 79 (*citing Blowe v. Peyton*, 208 Va. 68, 74, 155 S.E.2d 351 (1967)). "A trial court may correct its judgment through a Writ of Coram [Vobis] when the judgment is founded on an error of fact that was not evident on the record." *Commonwealth v. Singh*, 53 Va. Cir. 88, 89 (Fairfax 2000) (*citing Taylor v. State of Alabama*, 335 U.S. 252, 68 S. Ct. 1415, 92 L. Ed. 1935 (1948)). Errors of fact include cases "where judgment is rendered against a party after his death, or who is an infant." *Dobie*, 198 Va. at 770. "Such errors of fact do not merely render the judgment voidable upon a certain showing, as in cases where ineffective assistance of counsel is alleged or where required notices have not been given." *Morris*, 281 Va. at 79 (*citing Strickland v. Washington*, 466 U.S. 668, 691-96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Nelson v. Warden*, 262 Va. 276, 280, 552 S.E.2d 73 (2001)).

Considered a "remedy of last resort," *Fleming v. United States*, 146 F.3d 88, 89 (2d Cir. 1998), "a writ of error coram [vobis] is an `extraordinary' remedy to be granted only `under circumstances compelling such action to achieve justice'." *Morgan*, 346 U.S. at 511. "The Virginia Supreme Court explain[ed] that the Writ is used to further the interests of justice in cases where there is no other remedy." *Singh*, 53 Va. Cir. at 89 (*citing Dobie*, 198 Va. at 770). But significantly, it cannot be used "for any purpose other than to correct a `clerical error or an error in fact'." *Neighbors*, 274 Va. at 511 (*citing Blowe*, 208 Va. at 74).

As outlined in *Dobie*:

> The principal function of the writ is to afford to the court in which an action was tried an opportunity to correct its own record with reference to a vital fact not known when the judgment was rendered, and which could not have been presented by a motion for a new trial, appeal, or other existing statutory proceeding. *Black's Law Dict.*, 3d ed., p. 1861; 24 C.J.S., *Criminal Law*, § 1606(b), p. 145; *Ford v. Commonwealth*, 312 Ky. 718, 229 S.W.2d 470. It lies for an error of fact not apparent on the record, not attributable to the applicant's negligence, and which, if known by the court, would have prevented rendition of the judgment. It does not lie for newly-discovered evidence or newly-arising facts [ ... *Id.* at] 470. It lies for an error not available where advantage could have been taken of the alleged error at the trial, as where the facts complained of were known before or at the trial, or where at the trial the accused or his attorney knew of the existence of such facts but failed to present them. 24 C.J.S., *Criminal Law*, § 1606, at p. 148; 49 C.J.S., *Judgments*, § 312c, pp. 563, 567.

If the applicant has knowledge of a fact which would have been for his benefit if divulged, he cannot be permitted to conceal it, gamble upon the issue, and, after an adverse decision, ask the court to relieve him from the consequences of his own intentional or negligent act. 31 Am. Jur., *Judgments*, § 806, p. 325; *State v. Boyd*, 117 Neb. 320, 220 N.W. 281, 58 A.L.R. 1283, and Anno., at 1286.

## C. *Neighbors and Dobie*

The two leading cases in Virginia with respect to the application of the writ of error *coram vobis* and Va. Code § 8.01-677 (or its predecessor, Va. Code Ann. § 8-485) are *Neighbors*, 274 Va. 503, 650 S.E.2d 514 (2007), and *Dobie*, 198 Va. 762, 96 S.E.2d 747 (1957).

In *Neighbors*, the defendant entered an Alford plea to the reduced charge of resisting arrest in the General District Court. *Id*. at 506. Neighbors was convicted and fined $50. *Id*. Subsequently, Neighbors filed a Petition for a "Writ of Error *Coram Nobis* and Motion to Revoke/Vacate Plea," after the statutory period for appeal had expired. *Id*. Neighbors contended in his motion that, at the time of the plea, he "did not have the requisite capacity to enter a plea" because he was "taking heavy doses of medication at the time the plea was given." *Id*. He further argued that "the various medically prescribed medications he was taking rendered him incompetent and thus unable to grasp the gravity of his situation and to knowingly, intelligently, and voluntarily enter a plea of guilt." *Id*. at 509.

The Commonwealth responded to Neighbor's motion by arguing that a writ of *coram nobis* was the wrong vehicle to challenge the guilty plea in light of the fact that Petitioner had other remedies including "a timely appeal under [Va.] Code § 16.1-132 or a petition for a writ of habeas corpus." *Id*. at 511. The Commonwealth supported its argument by citing *Dobie* and *Blowe*, which recognized the "significantly restricted use of a writ of *coram vobis*." *Id*.

The Supreme Court held that Neighbors' allegation that he suffered from some undefined lack of capacity due to medication at the time of his guilty plea was neither a claim of a clerical error nor a claim of an error in fact. *Neighbors*, 274 Va. at 512. Therefore, the Supreme Court held that the Circuit Court did not err in its judgment "which determined [that] the writ of *coram vobis* was ... not available to Neighbors." *Id*.

In *Dobie*, the Court faced a similar issue to that faced by the Court in *Neighbors*. Dobie sought to have his guilty plea set aside and annulled based on a writ of error *coram vobis*. *Dobie*, 198 Va. at 763.

In May of 1955, Dobie was charged with one count of robbery and one count of rape. *Id*. At his arraignment on October 17, 1955, being without counsel, Dobie was not permitted to plead. *Id*. 763-64. However, the Court

appointed two "able and competent attorneys at law practicing before the bar of [the] Court to defend him." *Id.* at 763.

On November 11, 1955, Dobie, after being advised by his appointed counsel, entered a plea of guilty. *Id.* Dobie's guilty plea was memorialized in the Court's order which read:

> the Court being of the opinion that the accused fully understood the nature and effect of his plea, proceeded to hear and determine the case without the intervention of a Jury as provided by law. [Const. of Va., § 8] And, having heard the Commonwealth's evidence, the accused not presenting any evidence, the Court doth find the accused guilty of rape of Lillian Vann Scott as charged in the indictment.

*Id.* at 763-64.

After Dobie's guilty plea, the Commonwealth proffered its evidence to the Court. *Id.* at 764. Defense counsel did not contradict or deny any of the proffered evidence. *Id.* at 763. The Court then ordered a pre-sentence investigation. *Id.* 765. After reviewing the pre-sentence report, which revealed Dobie's extensive criminal history, the Court fixed his punishment for the rape at death. *Id.*

On February 16, 1956, Dobie, now represented by new counsel, filed a petition for a writ or error *coram vobis* under Va. Code Ann. § 8-485,[1] alleging that:

> on being returned to Virginia on extradition from Maryland in July 1955, he had been incarcerated in the City of Richmond and there held incommunicado to the whole world except the prosecution officers of Southampton County and not permitted to see a lawyer, relative, or friends; that, on his trial, he had not been called to testify; that no exceptions were taken to procedures during his trial, thus preventing him from seeking to establish his innocence by appeal on the original record.

*Id.* at 765. Dobie further alleged that:

> he did not question the integrity of counsel appointed by the court to defend him but alleged that he was not given an opportunity to explain his plea of guilty by testifying in his own behalf; that he was a person of meager training, victim of a broken home and lack of parental care. In spite of that,

---

[1] Va. Code Ann. § 8-485 provided that "[f]or any clerical error or error in fact for which a judgment or decree may be reversed or corrected on writ of error coram vobis, the same may be reversed or corrected on motion, after reasonable notice, by the court, or by the judge thereof in vacation." This Statute has been re-codified as Va. Code § 8.01-677.

> he alleged, he asserted his innocence of the rape charge to his counsel but tendered his plea of guilty on their advice, which no doubt was made with the sincere belief that the same was for his best interest; nevertheless, the same raises the grave doubt as to whether it was voluntary, free, without fear, without hope of reward (in this instance escape of electrocution), or other cause.

*Id.* at 765-66.

Based on these allegations, Dobie argued that his plea was not knowing, voluntary, and intelligent, and that the Court's lack of knowledge with respect to these facts constituted an error of fact, which, warranted reversal of his guilty plea pursuant to Va. Code Ann. § 8-485.

On March 10, 1956, the Court heard Dobie's motion. *Id.* at 766. At the hearing, Dobie testified that:

> he first spoke to his attorneys when they were appointed to defend him; that his first conference with them was in the jail about a week later; that they then asked him if he was guilty and he responded that he was guilty of the robbery charge but not of the rape; that they then told him his best bet was to enter a plea of guilty because if he took the stand he would make things worse than they were. He said that he then asked them if he could have the judge try him and plead guilty of the robbery but not of the rape, and they said no; that they then said "you take the judge for trial and let us handle everything so I say all right." He further testified that two or three weeks later he had another conference with his lawyers in which "the biggest thing they talked to me on was getting me to plead guilty"; that they said if he would plead guilty they would get him off light. He said they advised him he could "get the chair" for the robbery and he was fully aware of that when he admitted his guilt; but he said the reason he pleaded guilty was because he was scared and the lawyers said if he would enter a plea of guilty the judge would have mercy on him. He said he told his lawyers he wanted to testify but they told him to keep his mouth shut and let them handle things, that, if he testified, he would make things worse.

*Id.* Dobie further alleged that he was held incommunicado while in jail. *Id.*

On cross-examination, Dobie made admissions contradictory of his claim that he was held incommunicado in the jails. *Id.* at 767. He admitted "that, when his attorneys came to the jail to see him after their appointment, he asked them if it would not be better for the judge to try him and told them

he would like for the judge to try him; that he said this because, I had been before a judge on the rest of my cases." *Id.*

The Commonwealth then called "the sheriffs of Henrico and Southampton counties, a sheriff's deputy, the chief of police of the town of Franklin, and the attorneys who had represented Dobie at his trial." *Id.* at 767.

The substance of their testimony was as follows: (1) Dobie was never held incommunicado in jail, nor was he denied the right to communicate with his lawyers; (2) on multiple occasions Dobie admitted that he committed the robbery but denied the rape; (3) that Dobie admitted to entering the victim's office and beating her, but that he could not recall exactly what happened or what he stole because he was drunk; (4) that Dobie's attorneys met with him on three or more occasions; (5) that Dobie requested that he be tried without a jury; (6) that Dobie was involved in the plea discussions with the Commonwealth and that he understood that the Court was not required to accept the Commonwealth's recommended plea; and (7) that defense counsel spoke with Dobie before trial regarding whether he should take the stand and testify. *Id.* at 768.

Based on the foregoing facts, the Supreme Court of Virginia determined that "no error in fact existed in [the trial court's] judgment and conviction entered on November 11, 1955, for which a writ of error *coram vobis* should issue and for which the defendant's motion under the statute should be granted." *Id.* at 770.

The Court explained that the defendant's "plea of guilty was the result of his own choice, made after full disclosure to him by counsel of its nature and its possible result," *id.*; that, "[t]here [was] no suggestion that he was put in fear by his counsel or that they practiced any sort of fraud upon him," *id.*; that, while the defendant was under the natural fear of the consequences of his acts, he was not "without the ability to make a rational decision." *Id.*

The Court concluded that, "the defendant fully understood the nature and effect of his plea" and that, "[i]f a mistake was made, it was a mistake on the part of the defendant and his counsel on a question of procedure, not a mistake of fact correctable by writ of error *coram vobis*… ." *Id.* at 771. The Court stated that the "writ or motion cannot serve to gain a new trial for a defendant after a conviction on a plea of guilty because he might have fared better on a plea of not guilty." *Id.*

C. *Application of the Writ of Error Coram Vobis to the Instant Case*

When the foregoing legal principles are applied to the instant case, it is clear that no relief can be granted pursuant to the writ of error *coram vobis*.

First, the writ of error *coram vobis* requires that the error of fact "not appear on the record." Here, the error of fact alleged by the defendant is apparent on the record. *Id.* The District Court Judge who presided over the defendant's plea obviously knew that he did not question the defendant as to whether she waived her constitutional rights. Defense counsel and the

representative of the Commonwealth, both of whom must have been present at the time of Defendant's plea, were obviously aware that those questions were not asked. And the defendant was obviously aware of the fact that she was not asked those questions. Therefore, the fact that Defendant was not asked whether she waived her constitutional rights is a fact that was clear on the record at the time of the defendant's plea. For that reason alone, the Court must deny Defendant's Motion for Reconsideration.

Second, the error of fact alleged must be one "which, *if known by the court*, would have prevented rendition of the judgment." *Neighbors*, 274 Va. at 508 (*citing Dobie*, 198 Va. at 768-69) (emphasis added). The General District Court in the instant case certainly knew it was not asking the defendant to waive her constitutional rights.

*Dobie* states that the error of fact must be a "vital fact not known when the judgment was rendered." The facts of the instant case simply do not meet this requirement. To be clear, the issue is not one of "vital[ity]," for it is beyond question that a waiver of constitutional rights is a "vital" part of a constitutional plea. Rather, the issue is whether this "vital" matter was known or unknown to the trial court. What a judge says in court is "known" to the court. What a judge does not say in court is similarly "known" to the court. Thus, this is fundamentally different than when a judge, for example, issues a judgment against an individual who, unbeknownst to the court, has died. In short, an absolute requirement for a writ of error *coram vobis* is that the "vital" fact be "not known" at the time the judgment was rendered. Here it was.

To the extent the defendant is really arguing that the trial court was unaware of the constitutional requirement for an explicit waiver, that is a complaint about the trial court's commission of an error in law, not an error in fact, and it is not cognizable in a writ of error *coram vobis*. If it were true that such a legal error could be addressed by a writ of error *coram vobis*, it would convert an "extraordinary" and narrow remedy of "last resort," into a remedy that could be used routinely and indefinitely whenever a court failed to say something it needed to say. In other words, it would redefine an "error in fact" as simply "error." Such a dramatic expansion of the writ is for the General Assembly to determine, not this Court.

This Court would note that it places great reliance on *Neighbors* as controlling legal precedent and, therefore, it is worth stating that *Neighbors* — although not based on identical facts as the instant case — involves a sufficiently similar situation as to be fundamentally indistinguishable.

In *Neighbors*, the defendant makes a claim of constitutional dimension, specifically that his guilty plea was fatally defective because he was so medicated he could not knowingly, voluntarily, and intelligently enter a guilty plea. Similarly, in the instant case, the defendant makes a claim of constitutional dimension, specifically that her guilty plea was fatally defective because the trial court "had no factual basis upon which to find

a knowing, voluntary, and intelligent plea of guilty." (Motion To Reverse Judgment, at p. 2.) Thus, the Supreme Court's conclusion in *Neighbors* that the defendant's alleged "lack of capacity" to enter his plea is not a "claim of an error in fact" cognizable in a writ of error *coram vobis* is equally applicable in the instant case.

Finally, there is yet a third and completely distinct reason why the defendant is not entitled to relief. The writ of *coram vobis* lies only where the vital fact not known "could not have been presented by a motion for a new trial, appeal, or other existing statutory proceeding." *Neighbors*, 274 Va. at 508 (*citing Dobie*, 198 Va. at 768-69). Here, the error of fact alleged by the Defendant could have been raised in another statutory proceeding, specifically a direct appeal or by a writ of habeas corpus. See, e.g., *Gardner v. Warden of Virginia State Penitentiary*, 222 Va. 491, 494, 281 S.E.2d 876 (1981) (*citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)); *Haughey v. Smyth*, 187 Va. 320, 46 S.E.2d 419 (1948); *Sullivan v. Commonwealth*, 2004 Va. App. lexis 67 No. 2300-02-4 (Feb. 10, 2004). For this reason alone, the writ of error *coram vobis* would have to be denied.

## VI. *Conclusion*

For the reasons stated above, the Defendant's Motion To Reverse Judgment is denied.