## Richmond

### DONALD LaBONTE V. COMMONWEALTH OF VIRGINIA.

March 4, 1977.

Record No. 760649.

Present, All the Justices.

*Frederick B. Lowe*, for plaintiff in error.

*John W. MacIlroy, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Per Curiam.

Convicted of robbery and sentenced to a 15-year penitentiary term, the defendant, Donald LaBonte, seeks reversal on the ground that a confession he gave the police was admitted into evidence erroneously. Specifically, the defendant contends the confession was inadmissible under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), because it was obtained after he had announced during police interrogation that he desired to consult an attorney.

The issue of the confession's admissibility was determined adversely to the defendant in a pre-trial suppression hearing. Later, in a non-jury trial, the confession was admitted into evidence, and the defendant was convicted of the robbery of Rabbi Phillip Pincus, which had occurred on January 16, 1975, at Temple Emanuel in the City of Virginia Beach.

The evidence produced at the suppression hearing shows that on March 4, 1975, Detective Summerlin of the Virginia Beach Police Department interviewed the defendant at the city jail concerning the Pincus robbery. At the time of the interview, the defendant was in custody on an unrelated burglary charge, upon which he was represented by the Public Defender.

Prior to questioning the defendant concerning the Pincus robbery, Detective Summerlin advised him of the nature of the charge under investigation and also gave him the "Miranda warnings." The defendant told Summerlin he understood his rights, and he signed a "waiver of rights" form. Among other things, the waiver stated: "I do not want a lawyer at this time."

At "one point" in the interview, the defendant stated he "would like to talk to an attorney." However, "immediately after making request for an attorney" but before Summerlin said "anything," the defendant "began to ask [Summerlin] questions about the offense." Summerlin answered the inquiries, and "shortly after that [the defendant] gave [Summerlin] the confession." The interview lasted "thirty minutes or so" and was free of coercion or duress.

Indisputably, *Miranda* requires that if, during custodial interrogation, "the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474. This does not mean, however, "that the accused may not later waive his earlier request for counsel, though such waiver is not to be lightly assumed. The burden of establishing such waiver by the preponderance of the evidence, however, rests upon the [prosecution] and that burden is a heavy one, requiring convincing evidence." *United States* v. *Grant*, 549 F.2d 942, 945 (4th Cir. 1977) (footnotes omitted).

The facts in *Grant* are strikingly similar to the present factual situation. In custody in South Carolina on an unrelated charge, Grant, after receiving the "Miranda warnings" and signing a waiver form, was questioned by FBI agents concerning a Richmond bank robbery. He denied complicity in the crime and requested a lawyer. The agents questioned Grant no further concerning the robbery but proceeded to obtain from him "standardized identification information." Grant inquired whether he would be returned to Richmond and what would be the procedure in connection with the Richmond case. The agents

answered the inquiries, and then the defendant stated, "[i]t is all true." Although the "Miranda warnings" were repeated and Grant was reminded of his request for an attorney, he proceeded to detail the circumstances of the robbery.

In affirming Grant's conviction, the Court stated that *Miranda* does not "protect an accused, even though he has requested counsel, from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." Grant, the Court held, had "voluntarily and intelligently" waived "his previously invoked right to counsel." 549 F.2d at 946, 948.

We agree with this rationale, and we adopt it as dispositive of the present case. It supports our view, previously expressed, of the application of *Miranda* in similar situations. *Lamb* v. *Commonwealth*, 217 Va. 307, 311, 227 S.E.2d 737, 740-41 (1976); *Taylor* v. *Commonwealth*, 212 Va. 725, 727-28, 187 S.E.2d 180, 182-83 (1972); *Skinner* v. *Commonwealth*, 212 Va. 260, 263, 183 S.E.2d 725, 728 (1971); *Land* v. *Commonwealth*, 211 Va. 223, 228-29, 176 S.E.2d 586, 589-90 (1970); *Penn* v. *Commonwealth*, 210 Va. 229, 241, 169 S.E.2d 419, 427 (1969).

The record establishes convincingly that, after announcing he "would like to talk to an attorney" but before Detective Summerlin said "anything," the defendant initiated further conversation concerning the offense and thereafter freely confessed the crime. By his actions, therefore, the defendant voluntarily and intelligently waived his prior request for counsel. Accordingly, we affirm the judgment of the trial court.

*Affirmed.*