## Richmond

BOBBY DEAN BRADSHAW

V.

COMMONWEALTH OF VIRGINIA

Record No. 831554.

November 30, 1984.

Present: All the Justices.

*Colin R. Gibb (Warren and Gibb, P.C.,* on brief), for appellant.
*Todd E. LePage, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

Bobby Dean Bradshaw was charged with capital murder in an indictment alleging that he willfully, deliberately, and with premeditation killed "more than one person, namely: Don Mandell Williams and Troy Lee Hager, as a part of the same act or transaction." Code § 18.2-31(g).[1] By separate indictments, Bradshaw also was charged with the first-degree murder of Williams and Hager, Code § 18.2-32, and use of a firearm in the commission of each murder, Code § 18.2-53.1.

In a single trial on all indictments, a jury found Bradshaw not guilty of capital murder, guilty of two charges of first-degree murder, and guilty of two charges of use of a firearm. He was sentenced to the penitentiary for life and 35 years, respectively, on the murder convictions and for two years each on the firearm convictions.

In this appeal, Bradshaw contends the trial court erred in refusing to suppress his confession and all evidence derived there-

---

[1] Code § 18.2-31 provides in pertinent part:
The following offenses shall constitute capital murder, punishable as a Class 1 felony:

. . . .

(g) The willful, deliberate and premeditated killing of more than one person as a part of the same act or transaction.

from, refusing to recall and question the jury panel about alleged juror misconduct, and allowing the Commonwealth to proceed under an indictment charging capital murder after it previously elected to proceed under separate charges of first-degree murder. Bradshaw also makes two constitutional challenges to Code § 18.2-31(g).[2]

In view of the nature of the assignments of error, a cursory description of the crimes will suffice. On July 4, 1982, the victims' bodies were discovered in Williams' automobile which was parked near the top of a mountain in Bland County. Williams had suffered two shotgun wounds to his face from a range of between three and five feet. His body was on the driver's side of the car.

Hager's body was on the passenger's side. He also had sustained two shotgun wounds, one to the left, back portion of his skull from a distance of five to 10 feet, and the other to the back of his left shoulder which penetrated both lungs. Neither victim was armed.

Three ejected 12-gauge shotgun shell cases were found at the crime scene. The police later seized a 12-gauge shotgun belonging to the defendant. Ballistics tests established that the shell cases had been fired by the defendant's shotgun. Bradshaw confessed to both killings.

Bradshaw first contends that the court should have suppressed his confession and all evidence derived therefrom because it was obtained while he was in police custody and after he had requested an attorney. The Attorney General responds that the confession was properly admitted because Bradshaw voluntarily waived his right to counsel.

After the bodies were discovered, police officers went to Bradshaw's home and informed him that he was a suspect in the killings. They advised the defendant of his *Miranda* rights, and he executed a written waiver of these rights. Bradshaw also gave written consent to a search of his home and car.

---

[2] Bradshaw asserts that Code § 18.2-31(g) "is unconstitutional in that it allows for two charges and two convictions of first degree murder based upon a single indictment of capital murder." This issue, however, was not raised at trial, and we will not consider it on appeal. Rule 5:21.

The defendant also contends that § 18.2-31(g) is "unconstitutionally vague because it provides no standard for determining what is meant by 'same act or transaction.'" Because Bradshaw was acquitted of capital murder, this issue is moot, and, therefore, we will not address it.

While one police officer interviewed the defendant in the kitchen, other officers conducted the search. During the interview, Bradshaw denied any involvement in the crimes. However, after the officer informed the defendant that several witnesses had seen his automobile near the crime scene and suggested that Bradshaw killed the victims due to jealousy concerning his wife, the defendant decided that he would talk to an attorney.

Thereupon, the officer ceased the interrogation and advised Bradshaw that he would not question him further until Bradshaw retained an attorney. The officer requested that the defendant have his attorney contact him to discuss the possibility of a polygraph examination.

Thereafter, the officer went into the living room and seized two 12-gauge shotguns. He returned to the kitchen with the guns and told Bradshaw that he wanted to have the guns tested. As the officer was writing a receipt for one shotgun, Bradshaw spontaneously remarked: "That's not the one that did it."

At this time, the officer looked up and asked Bradshaw if he wanted "to talk about it." The defendant said he did, and without any further questioning by the officer, for the next 15 or 20 minutes Bradshaw gave a narrative statement admitting that he shot Williams and Hager. Bradshaw repeated this statement to his father and brothers in the officer's presence. Later, the defendant was taken to the Bland County Jail, and after again being advised of his *Miranda* rights, he repeated the statement which was recorded on tape.

An accused may waive his constitutional right to counsel, provided the waiver is made voluntarily, knowingly, and intelligently. *Miranda* v. *Arizona*, 384 U.S. 436, 444-45 (1966); *Tuggle* v. *Commonwealth* 228 Va. 493, 514, 323 S.E.2d 539, 551 (1984), this day decided; *Johnson* v. *Commonwealth*, 220 Va. 146, 157, 255 S.E.2d 525, 531 (1979), *conviction aff'd on retrial*, 221 Va. 736, 273 S.E.2d 784, *cert. denied*, 454 U.S. 920 (1981); *Lamb* v. *Commonwealth*, 217 Va. 307, 310, 227 S.E.2d 737, 740 (1976). Whether a suspect makes a knowing and intelligent relinquishment or abandonment of his right depends upon the totality of the facts and circumstances of each case. *Wyrick* v. *Fields*, 459 U.S. 42, 48 (1982); *Edwards* v. *Arizona*, 451 U.S. 477, 482 *reh'g denied*, 452 U.S. 973 (1981); *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938); *Tuggle*, 228 Va. at 514, 323 S.E.2d at 551; *Bunch* v. *Commonwealth*, 225 Va. 423, 433, 304 S.E.2d 271, 276 (1983),

*cert. denied,* 464 U.S. 977, *reh'g denied,* 104 S.Ct. 750 (1984); *Superintendent* v. *Barnes,* 221 Va. 780, 784, 273 S.E.2d 558, 561 (1981). *See also Washington* v. *Commonwealth,* 228 Va. 535, 545, 323 S.E.2d 577, 584 (1984), this day decided.

■ During a custodial interrogation, if a suspect requests an attorney, the interrogation must cease until an attorney is present. *Edwards,* 451 U.S. at 484-85; *Miranda,* 384 U.S. at 474. Such a request, however, does not protect a suspect when he makes a spontaneous admission not induced or initiated by the police, *LaBonte* v. *Commonwealth,* 217 Va. 677, 679, 232 S.E.2d 738, 739 (1977), or when "the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards,* 451 U.S. at 485.

■ In the present case, we will assume, without deciding, that Bradshaw was in police custody. He was fully advised of his *Miranda* rights, including his right to counsel. He acknowledged in writing that he understood his rights and waived them. When Bradshaw indicated a desire to talk to a lawyer, the officer ceased interrogation. Later, while the officer was preparing a receipt for the second shotgun, Bradshaw volunteered: "That's not the one that did it."

Clearly, this was a spontaneous admission which was neither induced nor initiated by the officer. Moreover, the narrative statement which followed was made voluntarily and constituted "a knowing and intelligent relinquishment or abandonment of a known right." *Edwards,* 451 U.S. at 482. We hold, therefore, that the court properly admitted the defendant's confession.

Next, the defendant contends that the court erred in refusing to summon and examine the jury panel regarding an alleged statement made by a juror. Carl Newberry and Randall Kidd were members of the venire which was sworn for voir dire. Newberry was struck, but Kidd was one of the twelve jurors who served.

Two weeks after the trial ended, Newberry executed an affidavit claiming that, while both men were on the venire, Kidd told Newberry that he thought the defendant "ought to be electrocuted." The defendant filed a motion to set aside the verdicts on the ground that Kidd had expressed an opinion concerning the defendant's guilt. The affidavit accompanied the motion.

Newberry and Kidd were summoned for questioning by the court. Newberry related what was previously stated in his affida-

vit, and Kidd denied having made the statement. Following this hearing, the court denied the motion.

Later, Bradshaw moved that he be allowed to summon and question the other jurors about Kidd's alleged statement. The court felt that this would be merely a "fishing" expedition and said it would "not permit just [a] random inquiry . . . after a verdict, short of having some reason to do that." The court further stated that from its examination of Kidd, it concluded that Kidd never made the alleged statement.

Whether a trial court should examine jurors is a matter addressed to the court's sound discretion, and, absent an abuse of discretion, its decision will not be disturbed on appeal. *Asbury* v. *Commonwealth*, 211 Va. 101, 106, 175 S.E.2d 239, 242 (1970). Moreover, unless there is a substantial reason to believe that juror misconduct has occurred, a court may decline to question the other jurors in that regard. *See Keil* v. *Commonwealth*, 222 Va. 99, 107, 278 S.E.2d 826, 832 (1981); *Waye* v. *Commonwealth*, 219 Va. 683, 701, 251 S.E.2d 202, 213, *cert. denied*, 442 U.S. 924 (1979).

The court had the opportunity to observe Newberry and Kidd when they testified. The court was satisfied that Kidd did not make the alleged statement, and it concluded that there was no substantial reason so poll the other jurors. We cannot say, therefore, that the court abused its discretion in refusing to examine the other jurors.

Finally, Bradshaw contends that because the Commonwealth elected to obtain warrants charging him with first-degree murder, it was barred thereafter from securing a warrant charging him with capital murder. Specifically, the defendant argues that "[w]hen one is charged with a lesser included offense and is bound over to the Grand Jury, the Commonwealth cannot come back and charge a new warrant with a higher offense and go through another preliminary hearing . . . ." This appears to be a double jeopardy argument.

Bradshaw was originally charged in two separate warrants with the first-degree murder of Williams and Hager. Following a preliminary hearing on these charges in the general district court, in which probable cause was found, the district court certified both charges to a grand jury. Initially, the Commonwealth unsuccessfully sought to have the district court amend these warrants to charge capital murder.

Later, the Commonwealth secured a warrant charging the defendant with capital murder, Code § 18.2-31(g), and after a preliminary hearing in the district court, this charge also was certified to a grand jury. Thereafter, the three charges were presented to the same grand jury which returned three separate indictments. The three indictments were prosecuted in a single trial.

Jeopardy does not attach until the jury is sworn. *Rosser* v. *Commonwealth*, 159 Va. 1028, 1031-32, 167 S.E. 257, 259 (1933). *See also Moore* v. *Commonwealth*, 218 Va. 388, 393, 237 S.E.2d 187, 190 (1977). Moreover, the institution of criminal charges, as well as their order and timing, are matters of prosecutorial discretion. *See Hensley* v. *City of Norfolk*, 216 Va. 369, 372-73, 218 S.E.2d 735, 739 (1975); *Macon* v. *Commonwealth*, 187 Va. 363, 373, 46 S.E.2d 396, 401 (1948).

In the present case, we are not presented with a double jeopardy problem because jeopardy had not attached. The two first-degree murder warrants simply were pending when the capital murder warrant was obtained. The mere fact that a lesser offense is *charged* does not preclude the Commonwealth from also charging a greater offense arising out of the same act or transaction. Accordingly, the court properly rejected this contention.

For the foregoing reasons, we will affirm the judgment of the trial court.

*Affirmed.*