## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

 v.

Michael Kent Walker

May 17, 1991

Case No. (Criminal) 91-71

By JUDGE JAY T. SWETT

  The defendant has moved to suppress two statements made to a police officer following his arrest for possession of cocaine with intent to distribute. A suppression hearing was held on April 25, 1991. Testimony showed the following occurred.

  Late on the evening of December 23, 1990, Charlottesville Police Officer D. I. Jones responded to a call near the intersection of Fifth Street SW and Dice Street. Officer Jones was responding to a complaint that drug dealing was going on in the area of that intersection.

  Officer Jones testified that when he arrived, he saw several males near the intersection. As he walked up to them, the group began to disperse. He approached one person on a bicycle who, according to the officer, appeared to be nervous. Because the officer was concerned that the bicycle rider might have a weapon, he conducted a pat-down search. No weapon was found. While this was occurring, the defendant, Mr. Walker, was the only other person who had been in the original group of men who stayed with Officer Jones and the man on the bicycle.

After the pat-down search, the man on the bicycle and the defendant left. Officer Jones then conducted a search of the immediate area and found a plastic baggie which appeared to contain crack cocaine. The officer put the baggie back at the spot where he found it. He then hid behind nearby bushes in such a way that he was able to see the area where he had encountered the men and had found the baggie. After several minutes, Officer Jones observed the defendant return on a bicycle. The defendant reached down and picked up the baggie. Upon observing this, Officer Jones came out from the bushes and approached the defendant. As he was doing so, the defendant threw the baggie. Officer Jones placed the defendant under arrest and retrieved the baggie.

Immediately after the defendant was arrested, Officer Jones advised the defendant of his *Miranda* rights. The defendant stated that he did not want to say anything. The officer took the defendant to the police station for processing. At the police station, Officer Jones took the defendant to an "I.D. room" to process the defendant.

According to Officer Jones, as the defendant was seated in a chair in the I.D. room, the defendant spontaneously said "Why me, I only touched it. What about the others?" Officer Jones testified that he did not respond but made a note of the defendant's statement.

After the defendant was fingerprinted, he was brought back to the I.D. room where Officer Jones conducted an inventory search of the defendant. Officer Jones testified that $73.00 was removed from the defendant's pockets. At this point, Officer Jones asked the defendant "Is this all of your money?" Officer Jones testified that his purpose in asking this question was only to confirm that he had inventoried all of the money that the defendant had on his person. He testified that he did not intend, by asking the question, to ask the defendant where the money had come from. Officer Jones testified that the defendant, in response to his question, stated "That's the money they gave me to pick up the coke." Officer Jones testified that he did not respond, but he did make a note of this statement.

The defendant's testimony at the suppression hearing did not vary too much from that of Officer Jones with regard to what occurred at the time the defendant was

arrested. When the defendant was placed under arrest, he confirmed that he was read his *Miranda* rights and that he told the officer he did not want to make any statement.

At the police station, the defendant testified that when Officer Jones conducted the inventory search and found the $73.00, Officer Jones asked either "Where did this come from?" or "Where did you get the money?" The defendant responded that it was money given to him to pick up coke. The defendant did not testify about the statement at the police station, "Why me? I only touched it. What about the others?" Rather, he testified that he made only the one statement described earlier. Thus, it will be assumed that the defendant denies having made the other statement.

There is no issue that the defendant was in custody at the time the statements were made. The only issue, therefore, is whether an improper custodial interrogation occurred in the I.D. room at the police station.

As a preliminary matter, the court credits the testimony of Officer Jones as to what occurred in the I.D. room. Having made that factual determination, the court concludes that the statements made by the defendant "Why me? I only touched it. What about the others?" should not be suppressed. There was no evidence that this statement was anything other than a spontaneous and voluntary utterance of the defendant. Officer Jones asked no question, nor did he make any comment which could remotely be construed to constitute an interrogation. It has long been held that spontaneous statements which are not induced or initiated by the police are not to be suppressed as the product of an improper custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 485 (1981); *Bronte v. Commonwealth*, 217 Va. 677, 679 (1977).

Whether to suppress the second statement is more difficult to resolve. Since *Rhode Island v. Innis*, 446 U.S. 291 (1980), the Supreme Court has held that a custodial interrogation includes "words or actions on the part of the police . . . that the police should know are reasonably likely to illicit an incriminating response from the suspect." 446 U.S. at 301. The Supreme Court stated that what is reasonably likely to illicit a response from the suspect should be viewed from the perspective of the suspect and not the intent of the police. *Id*.

The Commonwealth argues that the question by Officer Jones "Is this all of your money?" was a question made solely in the context of conducting an inventory of the money and items found on the defendant. This was a normal part of processing the defendant who had just been arrested. In support of its argument, the Commonwealth relies on *Owens v. Commonwealth,* 218 Va. 69 (1977); *United States v. Feldman,* 788 F.2d 544 (9th Cir. 1986) and *United States v. McLaughlin,* 777 F.2d 388 (8th Cir. 1985).

In *Owens,* the police were investigating an attempted break-in at a United States Post Office. The investigating officer suspected the defendant and went to his home. He asked the defendant to accompany him to the police station. While riding to the police station, the defendant asked the officer why he was being taken to the police station. In response, the officer indicated to him that it had to do with what he had done the previous night. The defendant told the officer that he did not know what he was referring to. The officer then made the statement, "It takes a man to tell the truth, anybody can lie . . . ." The defendant then said "I done it."

The Court first assumed that the defendant was in custody and that *Miranda* warnings should have been given. Since they were not given, the issue was whether the exchange that resulted in the defendant's statement "I done it" was a custodial interrogation. The Court held it was not, finding that the exchange between the two was not initiated by the officer, but rather by the defendant. The officer replied to a direct question by the defendant and had not initiated the conversation with the defendant.

In *United States v. McLaughlin, supra,* the government, during cross-examination of the defendant, demonstrated that the defendant had lied about his address and employment given when he was interviewed by an intake officer after his arrest. The purpose of offering the earlier statement was solely to attack his credibility at trial. After reviewing the applicable authorities, the Court of Appeals confirmed that general inquiries designed to obtain basic information necessary to book a defendant did not amount to a custodial interrogation. However, "if the government agent should reasonably be aware that the information sought, for merely basic identification purposes in the

usual case, is directly relevant to the substance offense charged," then the questioning will be subject to scrutiny under *Miranda*. 777 F.2d at 391-392. In *McLaughlin*, the Court found that the inquiries regarding residence and employment had no relationship to the offenses with which McLaughlin was charged, and therefore, there had been no custodial interrogation under *Miranda*. The cross-examination of the defendant about the misstatements was upheld.

In *United States v. Feldman, supra*, the defendant gave a false name to the officer when he was arrested. At the time he gave the false name, the defendant had not been advised of his *Miranda* rights. At trial the government sought to introduce the misidentification as evidence against the defendant. Relying on *United States v. Boothe*, 669 F.2d 1231 (9th Cir. 1981), the Court found that asking the defendant his name after his arrest, but prior to giving him his *Miranda* warnings, did not constitute a custodial interrogation because asking a person his name could not be held to remotely suggest that it would produce an incriminating or criminal response. 788 F.2d at 554.

A case somewhat closer to the facts here is *Bradshaw v. Commonwealth*, 228 Va. 484 (1984). In *Bradshaw*, the defendant was charged with first degree murder. Police officers went to the defendant's home and advised him that he was a suspect. After advising the defendant of his *Miranda* rights, the defendant executed a written waiver. In the course of the initial exchange, the defendant denied being involved in the crime. After further questioning, the defendant stated that he no longer wished to continue talking with the police and wanted to speak with an attorney. The police ceased the interrogation. The officers then seized two shotguns which they believed were involved in the crime. As one officer was writing a receipt for one of the guns, the defendant spontaneously said "That's not the one that did it." 228 Va. at 490. After that statement, the officer asked the defendant if he wanted to discuss the case. The defendant proceeded to confess to the murder. After reviewing the applicable authorities, the Court found that the defendant's initial statement, "That's the one that did it" was a spontaneous admission. *Id*. Nothing the officer had done induced or prompted the statement. The Court held that the defendant's statement

and subsequent confession had been properly admitted during the trial. *Id.*

Here, the statement sought to be suppressed was made in response to a direct question by Officer Jones. The question was "Is this all of your money?" The defendant had just been arrested for possession of cocaine with intent to distribute. The very nature of the crime with which the defendant was charged envisioned that the defendant possessed cocaine for the purpose of selling it for money. The question could well have been understood to be asking where the defendant got the money and whether it was related to cocaine sales. Thus, even though the officer did not intend the statement to constitute an interrogation of the defendant as to the source of the money or whether it was connected to the selling of cocaine, the question, nevertheless, from the perspective of the defendant, was one "reasonably likely to illicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). For this reason, the question falls in the category of one made in the context of a custodial interrogation under *Innis*, and the statement must be suppressed since the defendant had earlier invoked his right to remain silent.

For the reasons stated herein, the defense motion to suppress the statement he made in response to the question "Is this all of your money?" is sustained.