## CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

 v.

Jonathan Ross Heidel

February 5, 2002

Case No. (Criminal) 14259

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court on January 28, 2002, for hearing on the Defendant's Motion to Suppress Statements. The Defendant asserts that he did not waive his *Miranda* rights because he was not specifically asked by the officer if he waived his rights prior to being interrogated. He also argues that his inculpatory statements were made involuntarily because he was threatened with being prosecuted federally if he did not cooperate with the police.

For the reasons that follow, I do not agree with the Defendant, and the Motion to Suppress Statements is denied.

### *Waiver of Miranda Rights*

After the Defendant had been arrested for possession with intent to distribute MDMA and was in custody, Investigator Dondero of the Loudoun County Sheriff's Department read to the Defendant his rights under *Miranda* from a card. After the rights were read, Investigator Dondero asked the Defendant if he understood his rights. The Defendant said that he understood and was willing to speak to Investigator Dondero. The Defendant was not specifically asked if he waived his rights. Thereafter, the Defendant was interrogated by Investigator Dondero, and, later by Investigator Dodson of

the Loudoun County Sheriff's Department. Dodson was also a member of a DEA Drug Task Force in Northern Virginia. The Defendant made both oral and written incriminating statements.

An accused may waive his *Miranda* rights, provided his waiver is made voluntarily, knowingly, and intelligently. Whether an accused voluntarily, knowingly, and intelligently waives his rights depends upon the totality of the circumstances of each case. *Bradshaw v. Commonwealth*, 228 Va. 484, 489, 323 S.E.2d 567 (1984). An express written or oral statement of a waiver of rights under *Miranda* is not required. *Cheng v. Commonwealth*, 240 Va. 26, 35, 393 S.E.2d 599 (1990).

The Defendant does not dispute that the investigator fully advised him of his rights or that he understood his rights. He does not dispute that he proceeded to talk to the police after being advised of and understanding his rights. Without being asked, he said that he would speak to the investigator. I hold that, under these circumstances, the Defendant voluntarily, knowingly, and intelligently waived his rights before he spoke to the police.

### Voluntariness of Defendant's Statements

Beyond the issue of waiver, the Defendant also asserts that his incriminating statements to the investigators were not made voluntarily because Investigator Dodson threatened to prosecute the Defendant in federal court if he did not cooperate.

As stated above, after being advised of his rights and acknowledging that he understood them, the Defendant proceeded to talk to Investigator Dondero. Dondero felt that he was not getting information from the Defendant that he (Dondero) felt was helpful. Therefore, he asked Investigator Dodson to come into the interview room.

Dodson had been working as an undercover narcotics officer at the time the Defendant allegedly committed the offense for which he was arrested. It is alleged that the Defendant purchased MDMA from Dodson during what is characterized as a "reverse sting" purchase.

Dondero told the Defendant that Dodson was a police officer and gave the Defendant Dodson's real name. Dodson introduced himself to the Defendant. He told the Defendant that he was a Loudoun officer assigned to the DEA Drug Task Force. He showed the Defendant his credentials as a DEA Agent. The testimony was that the Defendant's jaw dropped a little and he emitted an audible sigh when Dodson's true identity was disclosed to him. The Defendant did not ask to speak to an attorney or to stop the interrogation.

Dodson testified that he did not tell the Defendant he was being arrested

that evening on federal charges. It is clear that Dodson advised the Defendant that probable cause existed to charge him with a federal offense. The Defendant does not dispute that he could be subject to federal prosecution based on the same activity that forms the basis of his prosecution in this state court proceeding. It is also clear that Dodson explained in detail to the Defendant the difference between criminal drug prosecutions in the federal and state systems. He told the Defendant about federal guideline sentencing, its scoring system, and certain mandatory minimum sentences. He clearly told the Defendant that sentences are stiffer in a federal court than in a Virginia State court. Dodson testified that he never represented to the Defendant that if he cooperated the charge would remain a state case.

The thrust of the Defendant's argument is that his will was overborne because Dodson threatened federal prosecution in the beginning before he explained the differences between the federal and state systems. The Defendant testified that, right after Dodson showed his DEA credentials, he told the Defendant that, if he signed a statement, then it would remain a state case, but that, if he did not sign a statement, then he would be charged that evening with a federal offense. The Defendant does not contend that Dodson gave him inaccurate information about the federal system and possible federal prosecution.

The Commonwealth has the burden to prove by a preponderance of the evidence that the Defendant's incriminating statements were made freely and voluntarily. In determining whether such statements were made voluntarily, the court must decide whether the statements were the product of an essentially free and unconstrained choice by the Defendant or whether the Defendant's will has been overborne and his capacity for self-determination has been critically impaired. In making this decision, the Court must look at the totality of the circumstances. *See, e.g., Bottenfield v. Commonwealth*, 25 Va. App. 316, 323, 487 S.E.2d 883 (1997).

I do not find from the evidence that Dodson threatened the Defendant with federal charges if he did not cooperate. I find that Dodson explained to the Defendant that what he was accused of could be a federal as well as a state offense and the differences between the federal and state systems. Dodson made no promises to the Defendant. He simply advised the Defendant, after explaining what he was facing, that he had some choices to make. I further conclude that the Defendant voluntarily spoke with the officers and wrote out the two statements. He hoped that, if he wrote a statement, then his case would remain in state court and, if found guilty, his sentence would be more lenient. I do not find that the Defendant was made any promises of leniency by either investigator.

The Defendant learned of Dodson's true identity before the conversation about the charge and the differences between the federal and state systems. I think that the revelation of Dodson's true identity and his role in the prosecution of the case played a greater role in the Defendant's decision to talk than information about possible federal prosecution. I think that the Defendant was confronted with the situation in which he found himself and voluntarily decided to make statements.