PRESENT:  All the Justices

HONORABLE THOMAS J. KELLEY, JR.,
GENERAL DISTRICT COURT JUDGE
FOR ARLINGTON COUNTY

                                        OPINION BY
v.  Record No. 120579          JUSTICE DONALD W. LEMONS
                                      JANUARY 10, 2013
THEOPHANI K. STAMOS,
COMMONWEALTH'S ATTORNEY
FOR ARLINGTON COUNTY


          FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
               William T. Newman, Jr., Judge

     In this appeal, we consider whether the Circuit Court of

Arlington County ("circuit court") erred when it issued a writ

of mandamus against the Honorable Thomas J. Kelley, Jr. ("Judge

Kelley"), a general district court judge, directing Judge Kelley

to sentence a criminal defendant within twenty-one days of its

order on the charge of driving while intoxicated.

                    I. Facts and Proceedings

     On May 22, 2009, Alexander Nobles ("Nobles") pled guilty to

driving while intoxicated ("DWI") in violation of Code § 18.2-

266 before Judge Kelley in general district court.  The case was

continued until July 7, 2009, on which date Judge Kelley

continued the case until August 2, 2011, and required that

Nobles be of good behavior and complete an alcohol safety action

program and 200 hours of community service.  At the August 2,

2011 hearing, Judge Kelley found Nobles guilty of reckless

driving and fined him $250.

The record does not contain sufficient evidence for us to determine whether Judge Kelley found Nobles guilty of DWI at the May 22, 2009 hearing.  On the warrant, the box located next to the disposition of "guilty as charged" is marked, but that mark is scratched through.  It is not possible for the Court to determine from the record when those marks were made or whether they reflect a certain disposition by Judge Kelley that was later changed as opposed to a mistake by Judge Kelley that was rectified.  The only disposition that is clearly marked indicates Nobles was tried and found by Judge Kelly to be "guilty of __" with the charge of "reckless driving" supplied by Judge Kelley.

The Commonwealth objected to Judge Kelley's decision to find Nobles guilty of reckless driving instead of finding him guilty and sentencing him for DWI, and filed a motion to reconsider.  Judge Kelley held a hearing on the motion to reconsider on August 31, 2011, but subsequently denied the motion.

Theophani K. Stamos ("Stamos"), the Chief Deputy Commonwealth's Attorney,[1] filed a petition for a writ of mandamus in the circuit court, seeking an order compelling Judge Kelley to sentence Nobles on the charge of DWI.  Judge Kelley filed a

_____

[1] Stamos became the Commonwealth's Attorney on January 1, 2012.

2

demurrer, and a hearing was held on the demurrer on December 19, 2011. On January 6, 2012, the circuit court dismissed the demurrer. On January 17, 2012, the circuit court issued a writ of mandamus, ordering Judge Kelley to sentence Nobles on the charge of DWI within twenty-one days.

Judge Kelley filed a motion for reconsideration and an answer on January 26, 2012. On February 6, 2012, the circuit court sent a letter to the parties informing them that the motion for reconsideration was denied.

Judge Kelley then filed his petition for appeal with this Court, and we granted an appeal on the following assignments of error:

1. The circuit court erred when it deprived the Hon. Thomas J. Kelley, Jr. of procedural due process by ruling on the petition without permitting him to answer the petition and without first conducting a hearing on the merits.

2. The circuit court erred by not dismissing the petition on the grounds that the Chief Deputy Commonwealth's Attorney lacked standing to file the petition for writ of mandamus.

3. The circuit court erred in granting the petition on the grounds that a writ of mandamus cannot be used to undo action that has already been taken.

4. The circuit court erred by not dismissing the petition on the grounds that the Hon. Thomas J. Kelley, Jr. lacked subject matter jurisdiction to alter the order entered on August 2, 2011 because more than twenty-one days had elapsed since entry of the order.

5. The circuit court erred in ordering the Hon. Thomas J. Kelley, Jr. to sentence Mr. Nobles for the charge of driving while intoxicated within twenty-one days of its order because the temporal requirement infringes upon the

3

Hon. Thomas J. Kelley's judicial discretion in imposing a sentence.

We also directed the parties to brief the following issue:

6.  Whether the defendant in the underlying criminal prosecution was a necessary party to the mandamus action in the circuit court.

## II. Analysis

### A. Standard of Review

The issues whether 1) Stamos had standing to file the petition for a writ of mandamus, 2) the August 2, 2011 order was voidable, 3) mandamus lies and 4) Nobles was a necessary party are all questions of law subject to de novo review upon appeal. Moreau v. Fuller, 276 Va. 127, 133, 661 S.E.2d 841, 844-45 (2008).

### B. Standing

Stamos filed the petition for a writ of mandamus in her individual capacity as Chief Deputy Commonwealth's Attorney. Judge Kelley argues that the right to bring a mandamus action is reserved for the Attorney General and the Commonwealth's Attorney, and there is no authority for a Chief Deputy Commonwealth's Attorney to bring a mandamus action.

The general requirements of standing have often been stated:

> The purpose of requiring standing is to make certain that a party who asserts a particular position has the legal right to do so and that his rights will be affected by the disposition of

4

the case. Thus, a party claiming standing must demonstrate a personal stake in the outcome of the controversy.

Goldman v. Landsidle, 262 Va. 364, 371, 552 S.E.2d 67, 71 (2001) (citations omitted).

In Moreau, we held that a Commonwealth's Attorney had standing to seek mandamus or prohibition in a matter involving an ongoing criminal prosecution. 276 Va. at 135, 661 S.E.2d at 845. The question presented in this appeal is whether that authority extends to the Chief Deputy Commonwealth's Attorney.

Code § 15.2-1627(B) states:

> The attorney for the Commonwealth and assistant attorney for the Commonwealth shall be a part of the department of law enforcement of the county or city in which he is elected or appointed, and shall have the duties and powers imposed upon him by general law, including the duty of prosecuting all warrants, indictments or informations charging a felony, and he may in his discretion, prosecute Class 1,2 and 3 misdemeanors, or any other violation, the conviction of which carries a penalty of confinement in jail, or a fine of $500 or more, or both such confinement and fine. He shall enforce all forfeitures, and carry out all duties imposed upon him by § 2.2-3126. He may enforce the provisions of subsection D of § 18.2-268.3.

This statute plainly indicates that both the Commonwealth's Attorney and his assistant "shall have the duties and powers imposed upon him by general law . . . ." It is clear from this language that in this respect the assistant attorney has the same powers and duties as the Commonwealth's Attorney.

5

Accordingly, if the Commonwealth's Attorney had standing to file a petition for a writ of mandamus in a particular matter, then the Chief Deputy Commonwealth's Attorney would have the same standing.

Judge Kelley also argues that Stamos lacked standing to file this mandamus action because there was "no ongoing criminal prosecution." Judge Kelley contends that the August 2, 2011 order became final after 21 days, and the petition for a writ of mandamus was not filed until September 29, 2011.

This petition for a writ of mandamus is unquestionably related to a criminal prosecution. The issue whether there is still an "ongoing criminal prosecution" will be determined by the outcome of this opinion. Under such circumstances, this petition for a writ of mandamus is so closely related to a criminal prosecution that the Commonwealth's Attorney has standing to file the petition. Accordingly, the Chief Deputy Commonwealth's Attorney had the same standing, and the circuit court did not err in failing to dismiss the petition for a writ of mandamus on that basis.

C. Mandamus and Subject Matter Jurisdiction

Stamos argues that convicting a defendant of a crime he was not charged with, and which is not a lesser-included offense, exceeded the authority of the court, is void ab initio, and therefore a judicial nullity. She contends that since a valid

6

sentencing event has yet to occur in this matter, the general district court retains subject-matter jurisdiction over this ongoing criminal proceeding, and mandamus is an appropriate remedy to compel a prospective sentencing event.

The general powers of the judiciary in Virginia are conferred by Article VI, Section 1 of the Constitution of Virginia. This section by itself confers jurisdiction upon the Supreme Court of Virginia in certain matters and further states: "Subject to the foregoing limitations, the General Assembly shall have the power to determine the original and appellate jurisdiction of the courts of the Commonwealth." The concept of jurisdiction defines power. With regard to the Court of Appeals of Virginia, the Circuit Courts and the General District and Juvenile and Domestic Relations District Courts, the powers of such courts are entirely prescribed by statute.

An order of a court of the Commonwealth can be "void" by operation of two concepts. An order may be "void ab initio," meaning it was without effect from the moment it came into existence. In that respect it is "void." Such a void order is a nullity without force or effect and may be collaterally challenged. An order of a court may also be "voidable" if it contains reversible error. Singh v. Mooney, 261 Va. 48, 52, 541 S.E.2d 549, 551 (2001). However, the order is not "void" until

7

it is directly and successfully challenged.  Id. at 51, 541 S.E.2d at 551.

Of critical distinction is the difference between a court lacking jurisdiction to act upon a matter and the court, while properly having jurisdiction, nonetheless erring in its judgment.  In Singh, we held that:

> [a]n order is void ab initio if entered by a court in the absence of jurisdiction of the subject matter or over the parties, if the character of the order is such that the court had no power to render it, or if the mode of procedure used by the court was one that the court "could not lawfully adopt."

Id. at 51-52, 541 S.E.2d at 551 (internal citations omitted)(holding that an order entered in violation of Rule 1:13 was voidable, not void ab initio).

There is no dispute that in this case the general district court had jurisdiction over the subject matter and the parties.  The remaining possibilities pursuant to Singh, depend upon whether the court had the power to render the judgment being collaterally attacked.

In Rawls v. Commonwealth, 278 Va. 213, 683 S.E.2d 544 (2009), a case involving collateral attack after conviction, we declared a sentence in excess of statutory limitations to be void ab initio.  We stated that the "character of the judgment was not such as the [C]ourt had the power to render."  Id. at 221, 683 S.E.2d at 549 (internal quotation marks omitted).  Of

8

course, the reason the court did not have "power to render" was because the General Assembly authorized a punishment for the offense and the punishment imposed was in excess of the authority granted by the General Assembly.  To restate the obvious: the Constitution of Virginia authorized the General Assembly to confer power upon the circuit courts.  The General Assembly prescribed the applicable punishments for criminal offenses.  The punishment imposed in Rawls exceeded the power granted to the circuit court.

Rawls quoted from a 19th century case involving liability of a surety.  See Anthony v. Kasey, 83 Va. 338, 5 S.E. 176 (1887).  In that case the court repeatedly stated that Kasey, the surety, had not been a party to the suit in question. Nonetheless, the trial court proceeded upon a rule to show cause against the surety after a deficiency had been determined upon sale of property.  The manner in which the court proceeded "was such a departure from the established mode of procedure as to render the decree not only erroneous, but void."  Id. at 342, 5 S.E. at 178.  We stated with regard to sureties, "[t]heir liability, if any, grows out of their undertaking as sureties on the bond, and can be ascertained and enforced only by suit on the bond in a common law court, where full opportunity for making defense and the constitutional right of trial by jury can be had."  Id. (quoting Thurman v. Morgan, 79 Va. 367, 372

9

(1884)).  Clearly, the trial court had proceeded against Kasey when he was not a party to the action, depriving him of his constitutional and statutory right to a trial by jury.  The trial court was without power to proceed in such a manner.

In Evans v. Smith-Wythe Airport Commission, 255 Va. 69, 495 S.E.2d 825 (1998), we held that the circuit court's order restricting the exercise of the power of eminent domain of an airport authority was void ab initio because the circuit court did not have the power to render a judgment which permitted a governmental entity to relinquish the power or right of eminent domain.  Id. at 74, 492 S.E.2d at 828.  In 1981, the Airport Commission initiated condemnation proceedings against the Evanses which subsequently resulted in an order reflecting a settlement which purported to limit the Airport Commission's right to initiate a condemnation action against the Evanses' property as long as they or their children owned the property. Id. at 71, 495 S.E.2d at 826.  In 1996, the Airport Commission initiated a declaratory judgment action alleging that the order entered in the condemnation proceeding was void ab initio.  Id. at 71, 495 S.E.2d at 827.  In this respect, the second action was a collateral challenge to the order in the first action. The character of the first judgment was not such that the court had the power to render, because the power of eminent domain is an inalienable attribute of sovereignty, and the court acted

10

outside the scope of Code § 25-46.34(e) when it divested the Airport Commission of the power or right of eminent domain given to it by the General Assembly.  Id. at 73, 495 S.E.2d at 827.

Burrell v. Commonwealth, 283 Va. 474, 722 S.E.2d 272 (2012), is the most recent case in which we have found that a court rendered a judgment it did not have the power to render, and that the judgment was therefore void ab initio.  In Burrell, the circuit court order contained a provision stating that the court would reduce the defendant's conviction from a felony to a misdemeanor following the defendant's incarceration and successful completion of probation.  Id. at 476, 722 S.E.2d at 272.

The circuit court ruled that Code § 19.2-303 gave it jurisdiction to change the offense of conviction in the sentencing order after the court had lost jurisdiction to modify the sentencing order pursuant to Rule 1:1.  Id. at 479, 722 S.E.2d at 274.  That statute, however, did not authorize the circuit court to reduce a conviction from a felony to a misdemeanor after a defendant had served the active portion of a sentence.  Rather, it authorized the circuit court to "suspend or otherwise modify the unserved portion of such a sentence." Id.  We held that the circuit court did not have the power to render a judgment reducing Burrell's conviction from a felony to a misdemeanor more than five years after the entry of the

11

sentencing order, and the order was therefore void ab initio.[2]
Id. at 480, 722 S.E.2d at 275.

In the cases analyzed above, the court orders were void ab initio because the courts did not have the power to render the judgments at issue. In this case, however, Judge Kelley did have such power as a general district court judge to render the judgment at issue.

The case was begun in a normal manner not unlike thousands of cases brought in the Commonwealth every year. We are aware that warrants are routinely amended, particularly in the general district courts. The power to do this is plainly evident in Code § 16.1-129.2, which provides in pertinent part:

> Upon the trial of a warrant, the court may, upon its own motion or upon the request either of the attorney for the prosecution or for the accused, amend the form of the warrant in any respect in which it appears to be defective. But when the warrant is so defective in form that it does not substantially appear from the same what is the offense with which the accused is charged, or even when it is not so seriously defective, the judge of the court having examined on oath the original complainant, if there be one, or if he sees good reason to believe that an offense has been committed, then without examination of witnesses, may issue under his own hand his warrant reciting the offense and requiring the defendant in the original warrant to be arrested and brought before him. Upon the arrest of the defendant on the new warrant and his production or appearance in court the trial shall proceed

---

[2] Burrell, long after the 21-day period prescribed in Rule 1:1 had made the conviction order final, sought to collaterally attack the order in this proceeding.

> upon the new warrant.  When there is an amendment
> of the original warrant the trial shall proceed
> on the amended warrant.  But whether the warrant
> is amended or a new warrant is issued, the court
> before proceeding to trial on the same may grant
> a continuance to the prosecution or to the
> defendant upon such terms as to costs as may be
> proper under the circumstances of the case;
> provided, however, that if the warrant be amended
> or if a new warrant be issued after any evidence
> has been heard, the accused shall be entitled to
> a continuance as a matter of right.

Code § 16.1-129.2 (emphasis added).

Stamos argues that the doctrine of separation of powers does not permit the court to do exactly what is permitted by Code § 16.1-129.2.  The record in this case does not specifically reference the basis for Judge Kelley's ruling.  However, this statute clearly demonstrates that the power to amend warrants and even issue a new warrant is vested in the general district court judge.  The issue is not whether the court had the power to do so.  It did.  The issue is whether the court erred when it did so.

The dissent maintains that once a plea of guilty is accepted by the court, it is the equivalent of a conviction for that offense, and imposition of punishment is then authorized.  As we stated earlier, however, the record does not support Stamos' contention that Nobles' guilty plea was ever accepted by Judge Kelley.  If Judge Kelley never found Nobles guilty of DWI,

13

Judge Kelley retained the authority to amend the warrant as provided in Code § 16.1-129.2.

The general district court has jurisdiction over the offense of reckless driving (Code § 16.1-123.1(1)(b)); the defendant was before the court; Judge Kelley did not sentence Nobles beyond the statutory range. While Judge Kelley had the jurisdiction to amend the warrant, he may have erred in the manner in which he did so. We have previously stated: "A challenge to an order based on a trial court's misapplication of statute generally raises a question of court error, not a question of the court's jurisdiction." Hicks v. Mellis, 275 Va. 213, 219, 657 S.E.2d 142, 145 (2008). Accordingly, the August 2, 2011 order was not void ab initio.

The August 2, 2011 order became final after 21 days in accordance with Rule 1:1. Judge Kelley has lost subject matter jurisdiction to modify the August 2, 2011 order. Additionally, mandamus is not the appropriate remedy here, as "[m]andamus is applied prospectively only; it will not be granted to undo an act already done." In re Commonwealth, 278 Va. 1, 9, 677 S.E.2d 236, 239 (2009). Because the August 2, 2011 order is final and can no longer be undone, the circuit court erred when it issued a writ of mandamus against Judge Kelley.

In light of our holding that mandamus does not lie, we need not address the issues raised in assignments of error 1 and 5

14

regarding whether Kelley's procedural due process rights were violated in the circuit court or whether the circuit court erred in imposing a temporal requirement of twenty-one days in the writ of mandamus.

## D. Necessary Parties

Although Nobles may be indirectly affected by the outcome of this appeal, he is not a necessary party to the appeal. This Court has previously ruled on the merits of petitions of mandamus and prohibition where the underlying case was criminal in nature and the defendant in the underlying case was not made a party. See, e.g., In re Commonwealth, 278 Va. 1, 677 S.E.2d 236 (2009); Moreau v. Fuller, 276 Va. 127, 661 S.E.2d 841 (2008); In re Horan, 271 Va. 258, 634 S.E.2d 675 (2006).

A mandamus proceeding is properly directed against the person or body who may be compelled to perform a ministerial duty. See Moreau, 276 Va. at 135, 661 S.E.2d at 845-46. Because a defendant in an underlying case would have no right to prevent a judge from performing a ministerial act, the defendant's presence in cases adjudicating writs of mandamus or prohibition is not required.

## III. Conclusion

We hold that the circuit court did not err in its determination that Stamos had standing to file the petition for a writ of mandamus. However, we hold that the circuit court

15

erred in issuing a writ of mandamus ordering Judge Kelley to sentence Nobles on the charge of DWI.

Accordingly, we will reverse the order of the circuit court and dismiss the petition for a writ of mandamus.

<u>Reversed and petition dismissed.</u>


JUSTICE McCLANAHAN, dissenting.

Simply dismissing the constitutional doctrine of separation of powers, the majority concludes Judge Kelley possessed <u>statutory</u> authority to exercise acts within the inherent power of the executive branch. Under the majority's rationale, then, the separation of powers doctrine has no application to lower courts because the Constitution of Virginia confers power upon the General Assembly to determine the <u>jurisdiction</u> of the lower courts. Yet this proposition runs counter to fundamental constitutional principles that guide our three separate branches of government and ignores the distinction between judicial power and jurisdiction.

The majority's analysis stems from its misconception that the General Assembly, rather than the Constitution of Virginia, vests the lower courts with their judicial power. Article VI, Section 1 provides that "[t]he judicial power of the Commonwealth shall be vested in a Supreme Court and in such other courts of original or appellate jurisdiction subordinate

16

to the Supreme Court as the General Assembly may from time to time establish."  Although the General Assembly is given "the power to determine the original and appellate jurisdiction of the courts of the Commonwealth," the concepts of judicial power and jurisdiction are not the same.  Va. Const. art. VI, § 1. "The power under the constitution [is] judicial; the mode of exerting it [is] prescribed by law in regulating the jurisdiction.  Clothed by the constitution with all judicial power, vested by law with the jurisdiction to exercise it, the obligation upon the Judges to perform the duties, is complete." Sharpe v. Robertson, 46 Va. (5 Gratt.) 518, 633 (1849).  In other words, the judicial power of the lower courts is not "entirely prescribed by statute."  Rather, the Constitution of Virginia vests judicial power in the courts; the General Assembly, however, is only empowered to determine the jurisdiction of the courts, i.e., the mode of exercising that judicial power.

The controlling issue in this case is not whether Judge Kelley exceeded his jurisdiction or any statutory authority he had to act in the underlying criminal proceedings, but whether he exceeded his constitutional power in refusing to enter judgment on the offense charged by the Commonwealth and, sua sponte, charging a new offense of an entirely different nature and character.  The General Assembly cannot confer executive

17

power upon the courts by a grant of statutory authority.  See In re Phillips, 265 Va. 81, 86, 574 S.E.2d 270, 273 (2003) ("The General Assembly's power under Article VI, § 1 [of the Constitution of Virginia] to enact legislation fixing the original jurisdiction of circuit courts is subject to the separation of powers mandate of Article III, § 1.")

> In our system of government all power and authority are derived from the people.  They have seen fit by organic law to distribute the powers of government among three great co-ordinate departments – the executive, the legislative, and the judicial.  The Constitution of the State, which is the law to all, declares, in the seventh section of the first article, that "the legislative, executive, and judicial powers should be separate and distinct." This is a quotation from the Bill of Rights, an instrument which should never be mentioned save with the reverence due to the great charters of our liberties.  Of such importance is this principle deemed that it is repeated, and constitutes a distinct article, which declares that "the legislative, executive, and judiciary departments shall be separate and distinct, so that neither exercise the powers properly belonging to either of the others; nor shall any person exercise the power of more than one of them at the same time, except as hereinafter provided."

Carter v. Commonwealth, 96 Va. 791, 812, 32 S.E. 780, 784 (1899) (quoting former Va. Const. art. II (1870)).  The separation of powers doctrine, currently embodied in Article I, Section 5, and Article III, Section 1, is no less important today and applies to all branches of the government including the lower courts within our judicial branch.

18

The record establishes that Judge Kelley declined, over the Commonwealth's objection, to render judgment on the charge for driving while intoxicated.  Instead, Judge Kelley sua sponte entered a judgment of guilty on a charge of reckless driving – a charge never made by the commonwealth attorney and a charge that is not a lesser included offense of driving while intoxicated.  See Spickard v. City of Lynchburg, 174 Va. 502, 505-06, 6 S.E.2d 610, 611-12 (1940) (court properly refused instruction on reckless driving as lesser-included offense since crime of reckless driving and that of driving while intoxicated are distinct offenses established by different evidence).  Thus, Nobles could not be convicted by Judge Kelley of the offense of reckless driving.  See, e.g., Commonwealth v. Dalton, 259 Va. 249, 255, 524 S.E.2d 860, 863 (2000) ("[B]efore a defendant can be tried and convicted of [an offense], he must be charged with that offense.").

Commonwealth's Attorneys, not courts, are vested with the discretion to charge under applicable criminal statutes.  Thus, Judge Kelley could not try and convict Nobles of the reckless driving offense.

> "[I]t is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney." Kauffmann v. Commonwealth, 8 Va. App. 400, 410, 382 S.E.2d 279, 284 (1989).  Indeed, "the institution of criminal charges, as well as their order and timing, are

19

matters of prosecutorial discretion." <u>Bradshaw v. Commonwealth</u>, 228 Va. 484, 492, 323 S.E.2d 567, 572 (1984).

<u>Barrett v. Commonwealth</u>, 268 Va. 170, 178, 597 S.E.2d 104, 107-08 (2004) (quoting <u>Barrett v. Commonwealth</u>, 41 Va. App. 377, 391, 585 S.E.2d 355, 362 (2003)).  " 'A prosecutor has the discretion to decide under which of several applicable statutes the charges shall be instituted.' "  <u>In re Horan</u>, 271 Va. 258, 264, 634 S.E.2d 675, 679 (2006) (quoting <u>Hensley v. City of Norfolk</u>, 216 Va. 369, 373, 218 S.E.2d 735, 739 (1975)).  The "'conduct of a prosecution on behalf of the people by the prosecutor is an executive act' " and " 'prosecutorial discretion is an inherent executive power.' "  <u>Id</u>. at 263-64, 634 S.E.2d at 679 (quoting <u>Genesee Prosecutor v. Genesee Circuit Court</u>, 194 N.W.2d 693, 698 (Mich. 1972) and <u>Polikov v. Neth</u>, 699 N.W.2d 802, 808 (Neb. 2005)).

The legislative, executive, and judicial branches of government "shall be separate and distinct" and no one branch can "exercise the powers properly belonging to the others." Va. Const. art. III, § 1.  We have observed the importance of recognizing the "roles that are uniquely allocated to the [three branches of government]" in determining "what is within the inherent authority of the judiciary and what may be beyond its boundaries." <u>Moreau v. Fuller</u>, 276 Va. 127, 136-37, 661 S.E.2d 841, 846 (2008).  When a "defendant has been duly

indicted for an offense found to be within [a] statute, and the proper authorities seek to proceed with the prosecution, the court cannot refuse to try the case in the constitutional method because it desires to let the defendant go free." Sorrells v. United States, 287 U.S. 435, 450 (1932). Doing so "is inconsistent with the Constitution, since its exercise in the very nature of things amounts to a refusal by the judicial power to perform a duty resting upon it and, as a consequence thereof, to an interference with both the legislative and executive authority as fixed by the Constitution." Ex parte United States, 242 U.S. 27, 51-52 (1916).

The Commonwealth charged Nobles with driving while intoxicated in violation of Code § 18.2-266 and not reckless driving. It did not seek to amend or reduce the charge for driving while intoxicated. Judge Kelley's refusal to enter judgment on the charge of driving while intoxicated and substitution, sua sponte, of a charge for reckless driving and entry of judgment thereon was without constitutional authority. It infringed upon the executive power properly belonging to the Commonwealth's Attorney to decide which charges to institute against Nobles.[1]

---

[1] Code § 16.1-129.2 governs the "[p]rocedure" to be followed by the trial court "when [a] warrant [is] defective" and permits the trial court to amend the form of the warrant or issue a new warrant under specified conditions when the warrant is defective

21

Article VI, § 1 of the Constitution of Virginia confers "judicial power" upon the courts, and Article III, § 1 prohibits the exercise of executive power by the courts.  Where, as here, a trial court has exceeded the scope of its constitutional authority by exercising "power[] [that] properly belong[s]" to the executive department, we need look no further than the Constitution of Virginia to conclude its exercise of such power is of no effect.  Lacking the power to institute the charge of reckless driving and enter judgment thereon, Judge Kelley's order of August 2, 2011, finding Nobles guilty of reckless driving and imposing a fine of $250 was "void ab initio because 'the character of the judgment was not such as [Judge Kelley] had the power to render.' "  Rawls v. Commonwealth, 278 Va. 213,

in form.  This statute has no application to this case since Judge Kelley did not amend or issue a new warrant to correct a warrant that was defective in form.  In fact, there is no claim advanced here that the warrant was defective in form or that an amended or new warrant was issued for this or any other reason.  Furthermore, this statute does not even purport to confer special jurisdiction or power upon trial courts to choose the offense for which a criminal defendant will be charged – the statute only delineates the procedure governing defective warrants.  A statutory construction that suggests Code § 16.1-129.2 granted power to Judge Kelley to refuse to enter judgment on the offense charged in the warrant and substitute an offense of a different nature and character violates the separation of powers doctrine.  See In re Phillips, 265 Va. at 86, 574 S.E.2d at 273 ("The General Assembly's power under Article VI, § 1 [of the Constitution of Virginia] to enact legislation fixing the original jurisdiction of circuit courts is subject to the separation of powers mandate of Article III, § 1.").  Thus, the majority's strained construction of Code § 16.1-129.2 only begs the question of whether Judge Kelley had the constitutional authority, in the first place, to exercise executive power.

22

221, 683 S.E.2d 544, 549 (2009) (quoting Anthony v. Kasey, 83 Va. 338, 340, 5 S.E. 176, 177 (1887)); accord Evans v. Smyth-Wythe Airport Comm'n, 255 Va. 69, 73, 495 S.E.2d 825, 828 (1998).  An order that is void ab initio is "a complete nullity" and therefore, has no force and effect.  Singh v. Mooney, 261 Va. 48, 52, 541 S.E.2d 549, 551 (2001).[2]

Having found that Judge Kelley did not have the constitutional power to refuse disposition of the charge of driving while intoxicated and to institute the charge of reckless driving, I would hold that Stamos is entitled to a writ of mandamus compelling Judge Kelley to take action in the underlying prosecution of Nobles.[3]  "The office of the writ of mandamus is to compel corporations, inferior courts and officers to perform some particular duty incumbent upon them, and which is imperative in its nature."  Page v. Clopton, 71 Va. (30

---

[2] The majority distinguishes cases in which the court orders were void ab initio because the courts exceeded the scope of power conferred upon them by the General Assembly.  See Rawls, 278 Va. at 221, 683 S.E.2d at 549; Evans, 255 Va. at 73-74, 495 S.E.2d at 827-28; Burrell v. Commonwealth, 283 Va. 474, 480-81, 722 S.E.2d 272, 275 (2012).  Thus, under the majority's rationale, while the order of a court exceeding the scope of its statutory authority may be void ab initio, the order of a court exceeding its constitutional power is mere error unless the General Assembly has enacted legislation reiterating this scope of power.

[3] Because I would hold that Judge Kelley's order is void ab initio, I would further hold that the charge of driving while intoxicated is still pending and Judge Kelley has not lost subject matter jurisdiction over the underlying criminal proceedings.

23

Gratt.) 415, 417 (1878).  With regard to inferior courts in particular, the remedy of mandamus

> may be appropriately used and is often used to compel courts to act where they refuse to act and ought to act, but not to direct and control the judicial discretion to be exercised in the performance of the act to be done; to compel courts to hear and decide where they have jurisdiction, but not to pre-determine the decision to be made; to require them to proceed to judgment, but not to fix and prescribe the judgment to be rendered.

Id. at 418.

> When the action of a court is "a simple refusal to hear and decide the case; and this [C]ourt having held that no appeal lies from such refusal, it is exactly the case to which the highly remedial writ of mandamus is most frequently applied, in order to prevent a defect or failure of justice."

In re Horan, 271 Va. at 260, 634 S.E.2d at 677 (quoting Cowan v. Fulton, 64 Va. (23 Gratt.) 579, 584 (1873)).  See, e.g., Page, 71 Va. (30 Gratt.) at 428 ("If a judge . . . refuses to sign a proper bill, or to proceed to settle the matter of a bill objected to, he may, in either case, be compelled by mandamus to act" (emphasis removed)); Kent, Pain & Co. v. Dickinson, 66 Va. (25 Gratt.) 817, 823 (1875) ("It is well settled that applications for a mandamus to a subordinate court are warranted by the principles and usages of law in cases where the subordinate court having jurisdiction of a case refuses to hear and decide the controversy.").

24

Applying these principles, therefore, Stamos was entitled to a writ of mandamus compelling Judge Kelley to enter judgment on the charge of driving while intoxicated. Although Nobles entered a guilty plea to that charge as noted by Judge Kelley on the warrant, Judge Kelley did not enter judgment on that plea as he was required to do. See Code § 19.2-258 ("In all cases of a misdemeanor upon a plea of guilty, tendered in person by the accused or his counsel, the court shall hear and determine the case without the intervention of a jury."). Judge Kelley's refusal to adjudicate the case undermined the "roles that are uniquely allocated to the [three branches of government]." Moreau, 276 Va. at 136, 661 S.E.2d at 846. See Ex parte United States, 242 U.S. at 42 ("[T]he possession by the judicial department of power to permanently refuse to enforce a law would result in the destruction of the conceded powers of the other departments and hence leave no law to be enforced.").

Since there had been no disposition on the charge of driving while intoxicated when the circuit court entered its order, however, I would remand this case and instruct the circuit court to issue a writ of mandamus directing Judge Kelley to rule upon the charge of driving while intoxicated in violation of Code § 18.2-266, and to impose sentencing as required by law.